UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FUEL MEDICAL LLC,

                    Plaintiff,

        v.

SONOVA USA INC.,

                    Defendant.

CASE NO. C22-5934 BHS

ORDER

        This matter is before the Court on Defendant Sonova USA Inc.'s motion to

dismiss. Dkt. 12. This motion seeks dismissal with prejudice of all of Plaintiff Fuel

Medical LLC's claims. The Court agrees that Fuel Medical fails to state a claim upon

which relief can be granted. However, the Court grants Fuel Medical leave to amend its

claims of fraud (Count III), breach of the of the supply agreement's confidentiality

provision (Count IV), breach of the nondisclosure agreement (Count V), and

misappropriation of trade secrets (Count VI). Those claims are therefore dismissed

without prejudice and with leave to amend. The remaining claims (Counts I, II, and VII)

are dismissed with prejudice and without leave to amend. Accordingly, Sonova's motion

to dismiss is granted in part and denied in part.

# I.   BACKGROUND

Fuel Medical is an advisory company to hundreds of audiology and ear, nose, and throat medical providers. Dkt. 1 ¶ 1. As part of its advisory services, Fuel Medical assists its members by brokering the distribution of hearing aids. *Id.* Sonova manufactures hearing instruments that it sells to medical providers and other businesses. *Id.* ¶ 2.

On March 1, 2017, Fuel Medical and two of Sonova's predecessors-in-interest (Phonak LLC and Unitron Hearing, Inc.) entered into a supply agreement under which Phonak and Unitron Hearing "could sell products to Fuel Medical's members in exchange for paying 'Revenue Sharing Payments' to Fuel Medical." Dkt. 1 ¶ 17. Fuel Medical also agreed to market and promote Sonova's products to its members and organize Sonova product trainings with its members. *Id.*

The supply agreement also contained a confidentiality provision under which both parties agreed to not use or disclose certain information except to fulfill their obligations under the supply agreement. Dkt. 1 at 36. In January 2018, the parties entered into a similar nondisclosure agreement to aid discussions concerning "Sonova's product development cycle concerning the Phonak brand." *Id.* at 67.

The supply agreement provided that "the agreement would continue for a period of three years, defined as the 'Initial Term,' and then would be automatically renewed for two successive renewal terms of one year each, defined as a 'Renewal Term,' unless earlier terminated." Dkt. 1 ¶ 18. The supply agreement also provided: "Each party may terminate this Agreement upon one hundred eighty (180) days' prior written notice to the other party without cause and for any or no reason whatsoever." *Id.* at 29.

Under the original terms of the supply agreement, the second renewal term was set to expire on February 28, 2022. Dkt. 1 at 49. However, the parties amended the supply agreement eight times, extending the agreement's expiration date. *Id.* at 46–66. The eighth and final amendment provides: "The Parties agree to further extend the Term (including the initial Term and each Renewal Term) of the Existing Agreement through September 15, 2022." *Id.* at 65.

On September 15, 2022, at 5:00 p.m., Sonva's vice president of commercial sales, Jason Mayer, informed Fuel Medical's founder, Brendan Ford, "that Sonova was terminating the contract with Fuel Medical effective immediately." Dkt. 1 ¶ 50. Ford then asked Mayer "how the transition would take place, and if Sonova's intent was [to] stop performing under the contract the following day and to sell directly to Fuel Medical's members using Fuel's contracted pricing without compensating Fuel Medical." *Id.* ¶ 50. Mayer responded, "Effectively, yes." *Id.*

That same day, Mayer sent to Fuel Medical a letter, which stated, "'Sonova USA Inc. will not be renewing the Supply Agreement . . . [which] terminated by its terms and extensions September 15, 2022.'" Dkt. 1 ¶ 51. At 5:31 p.m. of that day, Sonova sent to Fuel Medical's members an "announcement," which stated: "'[O]ver the last few months, we have been working alongside Fuel Medical to agree on terms for a new contract. . . . Unfortunately, we have been unable to find a path forward. Therefore, we have made the decision not to renew our agreement with Fuel Medical, effective immediately.'" *Id.* ¶ 53.

Sonova subsequently solicited direct sales from Fuel Medical's members without the aid of Fuel Medical. Dkt. 1 ¶ 57. In so doing, Sonova applied the same discounts to

1  certain products that were previously applied to those products under the supply

2  agreement. *Id.* Sonova also used similar "pricing tiers," "simply changing the word 'Fuel'

3  to 'Propel' in the names of the tiers (for example, 'Fuel Max Plus' became 'Propel Max

4  Plus,' and so forth)." *Id.*

5        Fuel Medical sued, alleging that Sonova:[1] (1) breached the supply agreement by

6  prematurely terminating it without providing notice of its intent to do so 180 days

7  beforehand; (2) breached the implied covenant of good faith and fair dealing by

8  prematurely terminating the supply agreement; (3) engaged in fraud by assuring Fuel

9  Medical that it intended to enter into a new supply agreement; (4) breached the supply

10  agreement's confidentiality provision by using Fuel Medical's confidential "pricing

11  information"; (5) breached the nondisclosure agreement by using this same pricing

12  information; (6) misappropriated Fuel Medical's trade secrets by using this same pricing

13  information; and (6) is liable under the doctrine of promissory estoppel for failing to

14  fulfill its promise to enter into a new supply agreement. Dkt. 1 ¶¶ 58–112.

15        Sonova moves to dismiss all of these claims with prejudice under Federal Rule of

16  Civil Procedure 12(b)(6). Dkt. 12 at 23. Sonova's arguments and Fuel Medical's

17  responses to them are addressed below.

18

19

20

---

21      [1] Fuel Medical sued both Sonova USA, Inc., and Sonova Holding AG. Dkt. 1 at 1. Fuel
Medical has since voluntarily dismissed its claims against Sonova Holding AG. Dkt. 20.

22  Accordingly, the only remaining defendant is Sonova USA, Inc.

1

## II.   DISCUSSION

2

### A.   Rule 12(b)(6) Standard.

3      Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a

4 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

5 theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A

6 plaintiff's complaint must allege facts to state a claim for relief that is plausible on its

7 face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility"

8 when the party seeking relief "pleads factual content that allows the court to draw the

9 reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although

10 the court must accept as true the complaint's well-pleaded facts, conclusory allegations of

11 law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to

12 dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v.*

13 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to

14 provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

15 conclusions, and a formulaic recitation of the elements of a cause of action will not do."

16 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S.

17 265, 286 (1986)). Courts "are not bound to accept as true a legal conclusion couched as a

18 factual allegation," *Papasan*, 478 U.S. at 265, and the "[f]actual allegations must be

19 enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

20 This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-

21 harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

22

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.    Fuel Medical Fails to State a Plausible Claim of Breach of Contract (Count I).**

Fuel Medical claims that Sonova breached the supply agreement by terminating the agreement on September 15, 2022, without providing notice of its intent to do so 180 days beforehand. Dkt. 1 ¶¶ 59–62; Dkt. 19 at 7.

Sonova moves to dismiss this claim, asserting that it did not terminate the supply agreement and that the agreement instead expired under its own terms on September 15, 2022. Dkt. 12 at 8–9. Sonova alternatively asserts that, even if it did prematurely terminate the supply agreement, Fuel Medical does not allege that it suffered any damages between the time it terminated the agreement (5:00 p.m. on September 15, 2022) and the time the agreement expired under the eighth amendment (12:00 a.m. on September 16, 2022). *Id.* at 9

Fuel Medical responds that "Sonova's reading of the Supply Agreement is wrong: the agreement did not expire on September 15, 2022; rather, it was to end 180 days later, in March 2023, because the agreement required Sonova (not Fuel Medical) to give that much notice prior to terminating the contract." Dkt. 19 at 7.

1   "Under Delaware law,[2] the elements of a breach of contract claim are: 1) a

2   contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting

3   damage to the plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch.

4   2003). "Delaware adheres to an objective theory of contracts, meaning that a 'contract's

5   construction should be that which would be understood by an objective, reasonable third

6   party.'" *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 760 (Del. 2022)

7   (quoting *Exelon Generation Acq., LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del.

8   2017)). "This approach places great weight on the plain terms of a disputed contractual

9   provision" and courts "interpret clear and unambiguous terms according to their ordinary

10  meaning." *Cox Commc'ns, Inc.*, 273 A.3d at 760 (internal quotation marks omitted)

11  (quoting *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del.

12  2019)).

13          Fuel Medical fails to plausibly allege that Sonova improperly terminated the

14  supply agreement. To the contrary, the factual allegations in the complaint indicate that

15  Sonova allowed the supply agreement to expire under its own terms.

16          To reiterate, the eighth and final amendment to the supply agreement provides:

17  "The Parties agree to further extend the Term (including the initial Term and each

18  Renewal Term) of the Existing Agreement through September 15, 2022." Dkt. 1 at 65.

19  Plainly, then, the agreement was set to expire on September 16, 2022.

20

21

22          [2] The parties agree that Delaware law applies to this claim. *See* Dkt. 12 at 7, Dkt. 19 at 7 n.3.

The complaint alleges that, on September 15, 2022, at 5:00 p.m., Mayer informed Ford "that Sonova was terminating the contract with Fuel Medical effective immediately." *Id.* ¶ 50. Notably, Ford asked Mayer "how the transition would take place, and if Sonova's intent was [to] stop performing under the contract *the following day* and to sell directly to Fuel Medical's members using Fuel's contracted pricing without compensating Fuel Medical." *Id.* ¶ 50 (emphasis added). Mayer responded, "Effectively, yes." *Id.* Therefore, Mayer clarified that Sonova intended to stop performing under the supply agreement on September 16, 2022—the day that it was set to expire under its own terms.

The complaint next alleges that Mayer also sent to Fuel Medical a letter "dated September 15, 2022, stating that 'Sonova USA Inc. *will not be renewing* the Supply Agreement . . . [which] terminated by its terms and extensions September 15, 2022.'" *Id.* ¶ 51 (emphasis added). Although this letter incorrectly states that the supply agreement expired on September 15, 2022, instead of on September 16, 2022, the letter also plainly communicates Sonova's intention for the agreement to expire under its own terms.

The complaint further alleges that, on September 15, 2022, at 5:31 p.m., Sonova sent to Fuel Medical's members an announcement, which stated: "[O]ver the last few months, we have been working alongside Fuel Medical to agree on terms for a new contract. . . . Unfortunately, we have been unable to find a path forward. Therefore, we have made the decision *not to renew our agreement* with Fuel Medical, effective immediately." *Id.* ¶ 53 (emphasis added). By stating that Sonova "made the decision not to renew [the] agreement with Fuel Medical, effective immediately," *id.* ¶ 53 Sonova

1    clarified that it did not terminate the supply agreement, but rather allowed it to expire

2    under its own terms.

3         For these reasons alone, Fuel Medical fails to plausibly allege that Sonova

4    prematurely terminated the supply agreement.

5         But even if Fuel Medical could plausibly allege that Sonova prematurely

6    terminated the supply agreement, the complaint does not allege any facts indicating that

7    such a premature termination of agreement caused Fuel Medical damages. *See H-M*

8    *Wexford LLC*, 832 A.2d at 140 (stating that, under Delaware law, damages are an element

9    to a breach of contract claim). As Sonova asserts, "[a]ssuming, *arguendo*, that Sonova

10   did prematurely terminate the Supply Agreement at 5:00 p.m. on September 15, 2022, the

11   only window of time during which Fuel Medical could have suffered any damages was

12   between 5:00 p.m. and 11:59 p.m. that same day." Dkt. 12 at 9. Yet the complaint does

13   not allege that Fuel Medical suffered any damages during that time. *See generally* Dkt. 1.

14        Fuel Medical responds that, under such circumstances, "the damages period

15   should cover the full six-month period during which the Supply Agreement should still

16   have been in effect (i.e., until mid-March 2023)." Dkt. 19 at 8. The Court disagrees.

17   Because the supply agreement was set to expire under its own terms on September 16,

18   2022, any premature termination of the agreement would not extend the agreement

19   beyond that date.

20        Fuel Medical's argument is also meritless considering that the parties amended the

21   supply agreement's expiration date *eight times* between February 2022 and September

22   2022 while they negotiated a potential new agreement. *See* Dkt. 1 at 49–6. In fact, the

1   eighth and final amendment extended the agreement's expiration date by only *8 days*—

2   from September 8, 2022, to September 16, 2022. *Id.* at 63, 65. These short-term

3   extensions demonstrate that the parties did not intend for the existing agreement to be

4   potentially extended up to nearly 180 days beyond the express expiration date provided

5   by each amendment.

6        In sum, Sonova did not terminate the supply agreement. It allowed the agreement

7   to expire under its own terms. Sonova was therefore not required to provide to Fuel

8   Medical 180 days' notice of an intent to terminate the agreement. Accordingly, Fuel

9   Medical fails to plausibly allege that Sonova breached the agreement by not providing

10  such notice. Because the facts are not in dispute and the sole issue is whether there is

11  liability as a matter of substantive law, this breach of contract claim (Count I) is

12  DISMISSED with prejudice.

13  **C.**    **Fuel Medical Fails to State a Plausible Claim of Breach of the Implied**
    **Warranty of Good Faith and Fair Dealing (Count II).**

14

15       Fuel Medical also claims that Sonova breached the implied covenant of good faith

16  a fair dealing by "not providing Fuel Medical with any notice prior to purportedly

17  terminating the 2017 Supply Agreement and its amendments without cause, by

18  surreptitiously planning to circumvent Fuel Medical while assuring Fuel Medical it

19  would not do so, and by encouraging Fuel Medical's network members to leave Fuel

20  Medical and to purchase hearing aids directly from Sonova." Dkt. 1 ¶ 70.

21       Sonova contends that this claim fails because the supply agreement expressly

22  addresses when it would expire or when a party could terminate it. Dkt. 12 at 10. Sonova

1 also contends that none of the alleged conduct that is not expressly addressed by the

2 agreement falls within the ambit of the implied covenant of good faith and fair dealing.

3 *Id.* at 10–11.

4         Fuel Medical responds that, because "the agreement has both a 'term' and a '180-

5 day' notice provision," "the parties' reasonable expectations were that neither side would

6 terminate the contract without cause before first providing the other 180 days['] notice."

7 Dkt. 19 at 9.

8         Under Delaware law,[3] the implied covenant of good faith and fair dealing "is best

9 understood as a way of implying terms in the agreement, whether employed to analyze

10 unanticipated developments or to fill gaps in the contract's provisions." *Oxbow Carbon*

11 *& Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del.

12 2019) (internal quotation marks omitted) (quoting *Dunlap v. State Farm Fire and Cas.*

13 *Co.*, 878 A.2d 434, 441 (Del. 2005)). "[T]he covenant is a limited and extraordinary legal

14 remedy" that "does not apply when the contract addresses the conduct at issue, but only

15 when the contract is truly silent concerning the matter at hand." *Oxbow Carbon & Mins.*

16 *Holdings, Inc.*, 202 A.3d at 507 (internal quotation marks omitted) (quoting *Nemec v.*

17 *Shrader*, 991 A.2d 1120, (Del. 2010); *Nationwide Emerging Managers, LLC v.*

18 *Northpointe Holdings*, LLC, 112 A.3d 878, 896 (Del. 2015); *Allied Capital Corp. v. GC-*

19 *Sun Holdings*, L.P., 910 A.2d 1020, 1033 (Del. Ch. 2006)). Furthermore, "[o]nly when it

20 is clear from the writing that the contracting parties 'would have agreed to proscribe the

21

22         [3] The parties agree that Delaware law also applies to this claim. *See* Dkt. 12 at 7, 10–11;
Dkt. 19 at 9 n.4.

1    act later complained of . . . had they thought to negotiate with respect to that matter' may

2    a party invoke the covenant's protections." *Dunlap*, 878 A.2d at 442 (quoting *Katz v. Oak*

3    *Indus. Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986)).

4         Fuel Medical's claim first fails insofar as it alleges that Sonova breached the

5    implied covenant of good faith and fair dealing by "not providing Fuel Medical with any

6    notice prior to purportedly terminating the 2017 Supply Agreement and its amendments

7    without cause." Dkt. 1 ¶ 70. Again, Sonova did not terminate the supply agreement, but

8    rather allowed it to expire under its own terms. Fuel Medical's allegation otherwise is

9    meritless. In any event, the supply agreement expressly addresses when it would expire

10   or when the parties could otherwise terminate it. Dkt. 1 at 29, 65. Therefore, even if

11   Sonova prematurely terminated the supply agreement, the implied covenant of good faith

12   and fair dealing would not apply to such conduct. *See Oxbow Carbon & Mins. Holdings,*

13   *Inc.*, 202 A.3d at 507.

14        Fuel Medical's claim also fails insofar as it alleges that Sonova breached the

15   covenant by "surreptitiously planning to circumvent Fuel Medical while assuring Fuel

16   Medical it would not do so" and "by encouraging Fuel Medical's network members to

17   leave Fuel Medical and to purchase hearing aids directly from Sonova." Dkt. 1 ¶ 70. Fuel

18   Medical's response does not contain any argument explaining how this alleged conduct

19   breached the implied covenant of good faith and fair dealing. *See* Dkt. 19 at 9–10. Nor

20   did it. The supply agreement does not clearly show that the parties would have agreed to

21   prohibit Sonova from selling directly to Fuel Medical's members after the agreement

22

1  expired had they thought to negotiate with respect to this matter when they entered into

2  the agreement. *See Dunlap*, 878 A.2d at 442.

3       Accordingly, Fuel Medical fails to allege a plausible claim of breach of the

4  implied covenant of good faith and fair dealing. Because the facts are not in dispute and

5  the sole issue is whether there is liability as a matter of substantive law, this claim (Count

6  II) is DISMISSED with prejudice.

7  **D.     Fuel Medical Fails to State a Plausible Fraud Claim (Count III).**

8       Fuel Medical next alleges that Sonova defrauded it by "repeatedly assur[ing] Fuel

9  Medical that it intended to renegotiate a new supply agreement with Fuel Medical, and

10  represented that it was actively working with its legal department to do so." Dkt. 1 ¶ 76.

11       Sonova asserts that this claim fails for two reasons. First, Sonova contends that the

12  fraud claim lacks the particularity required under Fed. R. Civ. P. 9(b). Dkt. 12 at 11–12.

13  Second, Sonova argues that this claim is improperly based exclusively on alleged

14  representations of future intention. *Id.* at 12.

15       Fuel Medical responds that the complaint alleges the basis for its fraud claim with

16  sufficient particularity. Dkt. 19 at 11. It also asserts that its fraud claim is not, in fact,

17  based on representations of future intention. *Id.* at 11. In so doing, Fuel Medical

18  confusingly states: "Fuel Medical's allegation is not merely that the parties agreed they

19  *would* continue to renegotiate a supply agreement . . . , but also that Sonova intentionally

20  misled Fuel Medical into believing that the parties *would* continue their relationship, and

21  that 'Sonova "*would* never drop" Fuel Medical without notice.'" *Id.* at 12 (emphasis

22  added) (quoting Dkt. 1 ¶ 12).

1    In Washington,[4] a plaintiff claiming fraud must show, among other things, "a

2    representation of an *existing fact*." *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d

3    157, 166 (2012) (emphasis added). Notably, a statement as to future performance is not a

4    representation of an existing fact and, therefore, does not support a fraud claim. *Shook v.*

5    *Scott*, 56 Wn.2d 351, 355 (1960). The test to apply in determining whether a

6    representation is a mere statement as to future performance is: "Where the fulfillment or

7    satisfaction of the thing represented depends upon a promised performance of a future

8    act, or upon the occurrence of a future event, or upon particular future use, or future

9    requirements of the representee, then the representation is not of an existing fact." *Id.* at

10   356 (internal quotation marks omitted) (quoting *Nyquist v. Foster*, 44 Wn.2d 465, 471

11   (1954)).

12   Fuel Medical's fraud claim is based primarily on alleged statements as to future

13   performance. Sonova's statement that it "would never drop Fuel Medical without notice,"

14   Dkt. 1 ¶ 37, is not a representation of an existing fact. It is a representation that Sonova

15   would refrain from doing something (namely, terminate the supply agreement without

16   notice) *in the future*. Sonova's statement that "a new contract was imminent," *id.* ¶ 38, is

17   also not a representation of an existing fact. It is rather a representation that Sonova

18   would do something (namely, enter into a new supply agreement) *in the future*.

19

20   [4] Sonova contends that Washington law applies to the fraud claim. Dkt. 12 at 8; Dkt. 21
     at 5. Fuel Medical disputes whether Washington law applies to this claim, but clarifies that,
21   "[w]hile [a conflicts-of-laws] analysis may matter later for determining Sonova's exposure for
     punitive or exemplary damages, it is not critical for resolving the general elements of a typical
     fraud claim." Dkt. 19 at 10–11. Therefore, the Court applies Washington law to determine
22   whether the complaint satisfies the general elements of a fraud claim.

Fuel Medical also fails to show how the remaining statements that serve as a basis to its fraud claim are false. *See Elcon Const., Inc.*, 174 Wn.2d at 166 (stating that "falsity" is an element of fraud). Fuel Medical alleges that, on June 1, 2022, Mayer informed Ford that "the Parties were on track to enter a new agreement." Dkt. 1 ¶ 34. Fuel Medical does not allege that, on that date, the parties were not, in fact, on track to enter into a new agreement. Fuel Medical also alleges that another Sonova representative, Greg Guggisberg, told Ford that "Fuel Medical's team 'is awesome. I am looking forward to collaborating much more with them and you when we finally get this done.'" *Id.* ¶ 36. Fuel Medical does not allege that Guggisberg was not actually looking forward to collaborating with Fuel Medical.

To the extent that either Ford's statement or Guggisberg's statement suggests that Sonova would enter into a new supply agreement with Fuel Medical at some time in the future, these statements do not support a fraud claim. *See Shook*, 56 Wn.2d at 355.

Accordingly, Fuel Medical fails to allege a plausible claim of fraud. However, in an abundance of caution, the Court declines to rule that this claim could not possibly be cured by the allegation of other facts. *See Cook, Perkiss & Liehe*, 911 F.2d at 247. This claim (Count III) is therefore DISMISSED without prejudice and with leave to amend.

**E.      Fuel Medical Fails to State a Plausible Claim that Sonova Breached the Supply Agreement's Confidentiality Provision (Count IV).**

Fuel Medical next claims that Sonova breached the confidentiality provision of the supply agreement. It asserts that, under the supply agreement, "Sonova agreed that Fuel Medical's pricing and pricing model was confidential." Dkt. 1 ¶ 84. It further claims that

1    Sonova breached the confidentiality provision by using its "pricing information and

2    pricing model" when it sold directly to Fuel Medical's members after the supply

3    agreement expired. *Id.* 1 ¶ 87.

4         Sonova contends that Fuel Medical's allegations are too vague to state a plausible

5    claim because they do not provide sufficient detail concerning the nature of the allegedly

6    confidential information or the manner in which Sonova improperly disclosed it. Dkt. 12

7    at 13. Sonova also asserts that, under the supply agreement, Sonova—not Fuel Medical—

8    set the prices for its own products. *Id.*

9         Fuel Medical asserts that its allegations are not too vague to state a plausible claim

10   and clarifies that the allegedly confidential information concerns discounts applied to

11   certain products and "pricing tiers." Dkt. 19 at 13 (citing Dkt. 1 ¶ 57). In so doing, Fuel

12   Medical does not explain what, exactly, "pricing tiers" are. *See generally id.*

13        The confidentiality provision of the supply agreement provides, in relevant part:

14   "So long as this Agreement is in effect and for a period of three (3) years following its

15   termination or expiration, each of the parties agrees: . . . not to use or disclose the

16   Confidential Information except to fulfill its obligations under this Agreement." Dkt. 1 at

17   36. The agreement defines confidential information as "[a]ll information, data,

18   communication and other materials, whether of tangible or intangible form, regarding the

19   party disclosing the same . . . or any subsidiary, Affiliate, customer or supplier thereof, or

20   otherwise identified by the Disclosing Party as sensitive or confidential to the party

21   receiving the same." *Id.* The agreement exempts from the requirements of the

22

1  confidentiality provision information "which has become generally available to the public

2  (without a violation of this Agreement by the Receiving Party)." *Id.*

3    Fuel Medical fails to plausibly allege that the disputed information is subject to the

4  supply agreement's confidentiality provision. Fuel Medical alleges that, after September

5  15, 2022, Sonova breached the confidentiality provision when it sent "'new pricing' to

6  Fuel Medical's members for the purpose of soliciting direct sales." Dkt. 1 ¶ 57.

7  Specifically, Fuel Medical alleges that, when Sonova sent the new pricing to the

8  members, Sonova used the following information that belonged to Fuel Medical:

9      Sonova not only duplicated Fuel Medical's exact pricing, applying either a
       $75 or $50 discount depending on the product, Sonova also ripped off Fuel
10     Medical's specific terminology and pricing tiers, simply changing the word
       "Fuel" to "Propel" in the names of the tiers (for example, "Fuel Max Plus"
11     became "Propel Max Plus," and so forth).

12  *Id.*

13    The complaint then states in a conclusory manner that the disputed information is

14  "confidential and proprietary." Dkt. 1 ¶ 57. But this is insufficient to defeat a motion to

15  dismiss. *See Vasquez*, 487 F.3d at 1249 ("'[C]onclusory allegations of law and

16  unwarranted inferences' will not defeat an otherwise proper motion to dismiss." (quoting

17  *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 820 (9th Cir.

18  2002))).

19    In any event, the supply agreement indicates that the disputed information belongs

20  to both Fuel Medical *and* Sonova. The agreement provides that, "[d]uring the Term of

21  this Agreement, [Sonova] *and* Fuel Medical shall establish and maintain strategic pricing

22  templates for the Network Members." Dkt. 1 at 31 (emphasis added). The agreement

1   further states that "[*Sonova*] shall invoice the Network Members *directly* for purchases

2   under this Agreement" and that "[n]othing contained in this Agreement shall be construed

3   as limiting [Sonova's] right to change *its* published list prices at any time, in its sole and

4   absolute discretion." *Id.* (emphasis added). Moreover, the agreement provides that

5   "Network Member pricing templates shall be provided *by* [*Sonova*] to Fuel Medical

6   electronically." *Id.* at 32 (emphasis added). In exchange for being able to sell its products

7   to Fuel Medical's members, Sonova agreed to make monthly "Revenue Sharing

8   Payments" to Fuel Medical. *Id.* Fuel Medical agreed to market and promote Sonova's

9   products to its members. *Id.* ¶ 17.

10         Under this agreement, Fuel Medical does not appear to have sold to its members

11   any of the products supplied by Sonova. Rather, Sonova appears to have sold its products

12   directly to Fuel Medical's members, applying "pricing templates" agreed to by both

13   parties. Notably, the complaint contains no specific, non-conclusory factual allegations

14   indicating that the discounts or "pricing tiers" in question are distinct from the "pricing

15   templates" established by both parties pursuant to the supply agreement. Therefore, the

16   supply agreement indicates that the disputed information belongs to both Fuel Medical

17   and Sonova.

18         Accordingly, Fuel Medical fails to establish a plausible claim that Sonova

19   breached the confidentiality provision of the supply agreement. Nevertheless, because the

20   deficiencies with this claim could possibly be cured by the allegation of other facts, the

21   Court grants Fuel Medical leave to amend this claim. *See Cook, Perkiss & Liehe*, 911

22   F.2d at 247. To plead a plausible claim, Fuel Medical must allege specific, non-

conclusory facts explaining (1) what, exactly, "pricing tiers" are, (2) how both the discounts and "pricing tiers" in question are distinct from the "pricing templates" contemplated by the supply agreement, and (3) why both the discounts and "pricing tiers" in question were, in fact, confidential under the supply agreement.[5] This claim (Count IV) is therefore DISMISSED without prejudice and with leave to amend.

**F.    Fuel Medical Fails to State a Plausible Claim that Sonova Breached the Nondisclosure Agreement (Count V).**

Fuel Medical further claims that Sonova breached a nondisclosure agreement—which is separate from the supply agreement—by using Fuel Medical's "[i]nformation to develop and promote its own knock off version of Fuel Medical's network services and pricing information, amongst other things." Dkt. 1 ¶ 94. The information underlying this claim (Count V) is the same as the information underlying the claim that Sonova breached the supply agreement's confidentiality provision (Count IV). Therefore, this claim fails for the same reasons that claim fails.

However, as with the previous claim, the Court grants Fuel Medical leave to amend this claim. *See Cook, Perkiss & Liehe*, 911 F.2d at 247. To plead a plausible claim, Fuel Medical must again allege specific, non-conclusory facts explaining what "pricing tiers" are and how both the "pricing tiers" and discounts in question are distinct from the "pricing templates" contemplated by the supply agreement. Fuel Medical must also allege facts sufficiently explaining why the discounts and "pricing tiers" in question

---

[5] In so doing, Fuel Medical must plead specific, non-conclusory facts indicating why the discounts and "pricing tiers" in question were not generally available to the public before Sonova allegedly used this information and, in turn, exempt from the agreement's confidentiality provision. *See* Dkt. 1 at 36.

were, in fact, subject to the requirements of the nondisclosure agreement.[6] This claim (Count V) is accordingly DISMISSED without prejudice and with leave to amend.

**G.    Fuel Medical Fails to State a Plausible Claim of Misappropriation of Trade Secrets (Count VI).**

Fuel Medical additionally claims that Sonova misappropriated its trade secrets by using its "pricing information and pricing model" when it sold directly to Fuel Medical's members after the supply agreement expired. Dkt. 1 ¶ 104. The information underlying this claim (Count VI) is also the same information underlying the previous two claims (Counts IV and V). Therefore, this claim fails for the same reasons that those claims fail.

As with the previous two claims, the Court grants Fuel Medical leave to amend this claim. *See Cook, Perkiss & Liehe*, 911 F.2d at 247. To reiterate, any amended complaint must allege specific, non-conclusory facts explaining what "pricing tiers" are and how both the "pricing tiers" and discounts in question are distinct from the "pricing templates" contemplated by the supply agreement. Fuel Medical must also allege sufficiently explaining why the discounts and "pricing tiers" in question were, in fact, trade secrets. This claim (Count VI) is accordingly DISMISSED without prejudice and with leave to amend.

---

[6] Like the supply agreement, the nondisclosure agreement excludes from its ambit "Information that . . . becomes generally available to the public through no breach of the [nondisclosure agreement] by the Receiving Party or its Representatives." Dkt. 1 at 67. Fuel Medical must plead sufficient facts explaining why the disputed information is not subject to this exclusion.

**H.      Fuel Medical Fails to State a Plausible Claim of Promissory Estoppel (Count VII).**

Fuel Medical finally claims that Sonova is liable under the doctrine of promissory estoppel. Dkt. 1 ¶¶ 108–13. Fuel Medical alleges that "Sonova promised that the supply agreement would be extended for at least five years" and that this promise "is binding on Sonova because injustice can only be avoided by enforcement of the promise." Dkt. 1 ¶¶ 109, 112.

Sonova contends that this claim fails because it is improperly based on statements of future intent. Dkt. 12 at 20. It also asserts that this claim is barred by the statute of frauds because any oral agreement to extend the supply agreement was not to be performed in one year. *Id.* at 21.

Fuel Medical responds that Sonova's promise that "the supply agreement would be extended for at least five years" is not a statement of future intent. Dkt. 19 at 21 (quoting Dkt. 1 ¶ 109). It further asserts that Sonova's statement that it "would never drop Fuel Medical without notice" also supports its promissory estoppel claim and is similarly not a statement of future intent. Dkt. 19 at 21 (quoting Dkt. 1 ¶¶ 32, 37). Finally, Fuel Medical contends that its promissory estoppel claim is not barred by the statute of frauds because "Sonova cannot use the formalities of a statute designed to prevent fraud to perpetrate its own fraud." Dkt. 19 at 21.

In Washington,[7] the elements of promissory estoppel are:

---

[7] Both parties analyze this claim under Washington law. *See* Dkt. 12 at 19–21; Dkt. 19 at 20.

ORDER - 21

> (1) [a] promise which (2) the promisor should reasonably expect to cause
> the promisee to change his position and (3) which does cause the promisee
> to change his position (4) justifiably relying upon the promise, in such a
> manner that (5) injustice can be avoided only by enforcement of the
> promise.

*Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 171 (1994) (internal quotation marks omitted) (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2 (1980)).

For at least two reasons, Fuel Medical's promissory estoppel claim fails. First, the alleged statements that serve as a basis for this claim are plainly statements of future intent. "A statement of future intent is not sufficient to constitute a promise for the purpose of promissory estoppel" because "[a]n intention to do a thing is not a promise to do it." *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 13 (2004). Put differently, an enforceable promise requires "an *express* undertaking or agreement" that "'something *shall* happen . . . in the future.'" *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 957 (1966) (emphasis added) (quoting Restatement of Contracts § 2(1) (1932)). Sonova's alleged statements that "the supply agreement *would* be extended for at least five years," Dkt. 1 ¶ 109 (emphasis added), and that it "*would* never drop Fuel Medical without notice," *id.* ¶¶ 37 (emphasis added), express Sonova's mere intention, not a promise to perform. This is insufficient to support a claim of promissory estoppel.

Second, Fuel Medical's promissory estoppel claim fails because the supply agreement expressly addresses when it would both automatically renew and ultimately

1  expire.[8] *See Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 129 Wn.

2  App. 303, 317 (2005) ("[T]he doctrine of promissory estoppel does not apply where a

3  contract governs."). Therefore, Fuel Medical cannot advance a promissory estoppel claim

4  to circumvent the express terms of the supply agreement.

5       For these reasons, Fuel Medical fails to allege a plausible claim of promissory

6  estoppel.[9] Because the facts are not in dispute and the sole issue is whether there is

7  liability as a matter of substantive law, this claim (Count VII) is DISMISSED with

8  prejudice.

### III.  ORDER

10      Therefore, it is hereby **ORDERED** that Sonova's motion to dismiss, Dkt. 12, is

11  **GRANTED in part and DENIED in part**. The motion is **GRANTED** insofar as it seeks

12  dismissal with prejudice of Counts I, II, and VII. Those claims are **DISMISSED with**

13  **prejudice and without leave to amend**. The motion is **GRANTED in part and**

14  **DENIED in part** insofar as it seeks dismissal with prejudice of Counts III, IV, V, and

15  VI. Those claims are **DISMISSED without prejudice and with leave to amend**. Fuel

16  Medical may file an amended complaint no later than 21 days from the date of this order,

17  which is no later than **Friday, June 30th, 2023**.

18  //

19  //

20  _____

    [8] *See* Dkt. 1 ¶¶ 18, 49, 65.

21      [9] Because Fuel Medical does not allege a plausible claim of promissory estoppel for each
    reason discussed above, the Court need not address whether this claim is also barred by

22  Washington's statute of frauds.

Dated this 9th day of June, 2023.

BENJAMIN H. SETTLE
United States District Judge