The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FUEL MEDICAL, LLC, a Washington limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>SONOVA USA INC., a Minnesota corporation,<br><br>    Defendant. | Case No. 3:22-cv-5934-BHS<br><br>DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: OCTOBER 13, 2023 |

## I. OVERVIEW AND RELIEF REQUESTED

Defendant Sonova USA Inc. ("Sonova") respectfully requests that this Court dismiss the First Amended Complaint of Plaintiff Fuel Medical Group, LLC ("Fuel Medical"), Dkt. 35, in its entirety, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

On June 12, 2023, this Court dismissed all of Fuel Medical's claims against Sonova. Dkt. 22. The Court, however, granted Fuel Medical the opportunity to replead its claim for fraud, as well as its claims based on its allegations that Sonova misused Fuel Medical's confidential information and trade secrets. Fuel Medical filed its First Amended Complaint on August 25, 2023, but its second bite at the apple fares no better than the first, and all of its claims should now be dismissed with prejudice.

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 1
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

Fuel Medical continues to base its fraud claim on alleged representations by Sonova about its intention and desire to enter into a new supply agreement with Fuel Medical. None of those representations, however, can support a claim for fraud because each of them expressed a prediction about future performance. Fuel Medical fails, yet again, to allege the misrepresentation of an existing fact.

Fuel Medical similarly fails to remedy the fatal flaws of its claims involving its alleged "confidential information" and "trade secrets." Fuel Medical continues to rely exclusively on vague and conclusory allegations regarding "pricing tier information" that do not sufficiently explain what actually constitutes the confidential or trade secret information. At best, these claims accuse Sonova of using its own prices and pricing information to make decisions about what to charge its customers for its products.

The Amended Complaint also adds a new claim for breach of contract. That claim, however, relies on a misreading of the Supply Agreement that would, in effect, result in an unintended windfall to Fuel Medical of payments that expressly belong to Sonova under the terms of the Agreement.

## II. FACTUAL ALLEGATIONS

Sonova manufactures hearing instruments and "sells them to physicians, private practice audiology businesses, and hearing instrument dispensing businesses." Dkt. 35 ¶ 2. It is the corporate successor to Phonak, LLC, which contracted on August 23, 2010, with Fuel Medical "to sell hearing instruments to Fuel Medical's 'Network Members.'" *Id.* ¶¶ 2, 9-10. On March 1, 2017, the parties entered into a new supply agreement (the "Supply Agreement") under which Phonak and another Sonova predecessor, Unitron Hearing, Inc., "could sell products to Fuel Medical's members in exchange for paying 'Revenue Sharing Payments' to Fuel Medical." *Id.* ¶ 13. The parties agreed that the Supply Agreement would continue for a period of three years, and then automatically renew for two successive renewal terms of one year each, unless otherwise terminated. *Id.* ¶ 23; Ex. A § 2.01. In other words, the parties only contracted for two automatic

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 2
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

renewals; if the parties did not reach agreement on a new contract at the end of the second renewal, the Supply Agreement would terminate of its own accord. *Id.*

The Supply Agreement also establishes the system by which Sonova charged Fuel Medical's members for purchasing Sonova's products. *Id.* ¶ 21. Specifically, the Supply Agreement provides Sonova "shall invoice Network Members directly for purchases [of Sonova products] under this Agreement," and "[n]othing in this Agreement shall be construed as limiting [Sonova's] right to change its published list prices at any time, in its sole and absolute discretion." *Id.*, Ex. A §§ 4.02, 4.03. It further provides "[Sonova] and Fuel Medical shall establish and maintain pricing templates for the Network Members. Fuel Medical and [Sonova] may, from time to time, change the strategic pricing templates by mutual written agreement of both parties." *Id.* § 4.02.

The Supply Agreement includes a confidentiality provision, which provides the parties would not use or disclose information it received from the other party on a confidential basis. *Id.* § 7.04. The confidentiality provision excludes from its protections, *inter alia*, information that "becomes available to the Receiving Party on a non-confidential basis from a source other than Providing Party," and information that "was in the Receiving Party's possession prior to the receipt from the Providing Party." *Id.* It also specifically excludes "the identities of the Network Members" from the definition of "Confidential Information." *Id.*

The parties agreed that none of the terms of the Supply Agreement could be modified or waived absent a written agreement signed by both parties. *Id.* § 7.07. The Supply Agreement also includes an integration clause that states neither party "executed this agreement in reliance upon any statement or omission" made by the other party. *Id.* § 7.23.

On January 30, 2018, Sonova and Fuel Medical executed a Non-Disclosure Agreement (the "NDA"), which provides the parties would keep confidential and not disclose certain "Information" that either received on a confidential basis from the other party. *Id.*, Ex. B. The NDA specifically excludes from its protections, *inter alia*, information "that becomes available

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 3
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

to the Receiving Party on a non-confidential basis from a source other than the Providing Party," and information that "was in the Receiving Party's possession prior to the receipt from the Providing Party." *Id.* § 2.

The parties operated under the Supply Agreement through its first term, and each of the two renewal terms that were automatically triggered. *Id.* ¶ 23. The second one-year renewal term was set to expire at the end of February 2022. On February 2, 2022, Sonova sent Fuel Medical a proposed draft of a new agreement. *Id.* Between February and September 2022, Fuel Medical and Sonova continued to negotiate the terms of a new supply agreement. *Id.* ¶¶ 24-26, 29.

During the same period, Fuel Medical and Sonova executed a total of eight amendments to the Supply Agreement, each of which extended its terms to a date certain to allow for negotiations to continue. *Id.* ¶¶ 24-26, 35-36. The eighth and final amendment, which the parties fully executed on September 8, 2022, provided that the Supply Agreement would expire on its own terms on September 15, 2022. *Id.* ¶ 36; Ex. A at 38-39.

On September 15, 2022, Sonova scheduled a call with Fuel Medical for 5:00 p.m. Pacific Standard Time. *Id.* ¶ 37. On that call, Sonova's Vice President of Commercial Sales, Jason Mayer, informed Fuel Medical that the Supply Agreement would terminate on its own terms as of September 16, 2022. *Id.* Shortly thereafter, Sonova informed Fuel Medical that it was withholding $500,000 of Revenue Sharing Payments for the month of September 2022 pursuant to the terms of the Supply Agreement. *Id.* ¶ 41.

On November 29, 2022, Fuel Medical filed its original complaint in this action, alleging that: Sonova breached the Supply Agreement's notice provisions and the covenant of good faith and fair dealing by terminating the Agreement prematurely and without notice; Sonova engaged in fraud by representing that it intended to enter a new supply agreement; Sonova breached the Supply Agreement's confidentiality provision and the NDA and misappropriated Fuel Medical's trade secrets by using Fuel Medical's "pricing information;" and that Sonova was liable under the doctrine of promissory estoppel for failing to fulfill its alleged promise to enter into a new

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 4
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

supply agreement with Fuel Medical. *See* Dkt. 1 ¶¶ 58-112. Sonova moved to dismiss the complaint in its entirety. Dkt. 12.

On June 12, 2023, this Court dismissed with prejudice Fuel Medical's claims relating to the termination of the Supply Agreement, as well as its claim for promissory estoppel (Counts I, II, & VII). *See* Dkt. 22 at 9-13, 22-23. The Court held that Sonova did not prematurely terminate the Agreement and that the Agreement expired of its own terms on September 16, 2022. *Id.* at 10. The Court also dismissed Fuel Medical's fraud claim because it was based exclusively on alleged statements as to future performance. However, "out of an abundance of caution," the Court dismissed the fraud claim without prejudice and granted Fuel Medical leave to amend. *Id.* at 14-15. Finally, the Court held that Fuel Medical failed to state a claim for breach of the confidentiality provision, breach of the NDA, and misappropriation of trade secrets (Counts IV, V, & VI) because Fuel Medical's complaint contained "no specific, non-conclusory factual allegations" indicating that the alleged "pricing information" was confidential or constituted trade secrets. *Id.* at 18-20. The Court dismissed those claims without prejudice and granted Fuel Medical leave to amend. *Id.*

On August 25, 2023, Fuel Medical filed its First Amended Complaint. Dkt. 35. The Amended Complaint alleges a new claim that Sonova breached Section 5.01 of the Supply Agreement by withholding $500,000 of the September 2022 Revenue Sharing Payments (Count I). *Id.* ¶¶ 51-58. Fuel Medical also repleads its claims for fraud (Count II), breach of the confidentiality provision of the Supply Agreement (Count III), breach of the NDA (Count IV), and trade secret misappropriation (Count IV).

### III. LEGAL STANDARDS

Sonova seeks dismissal of all of Fuel Medical's claims pursuant to Rule 12(b)(6). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Taylor v. Sullivan*, No. 13-cv-1479, 2014 WL 1089439, at *1 (W.D. Wash. Mar. 14, 2014).

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 5
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Akmal v. Centerstance, Inc.*, No. 11-cv-5378, 2013 WL 1499058, at *5 (W.D. Wash. Apr. 11, 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, if a claim "is not based on a proper legal theory, it should be dismissed." *Id.*

Sonova also seeks dismissal of Fuel Medical's fraud claim (Count II) pursuant to Rule 9(b) in addition to Rule 12(b)(6). The Court should dismiss a fraud claim if the allegations fail to state the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Segal Co. (E. States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) (quoting Fed. R. Civ. P. 9(b)). "General or conclusory allegations of fraud are insufficient to defeat a motion to dismiss." *Id.*

## IV. ARGUMENT

### A. FUEL MEDICAL FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT BASED ON THE $500,000 HOLDBACK (COUNT I).

Fuel Medical alleges that Sonova breached Section 5.01 of the Supply Agreement when it withheld $500,000 of the September 2022 Revenue Sharing Payments. Dkt. 35 ¶¶ 50-58. It alleges that Sonova was not entitled to hold back Revenue Sharing Payments because Sonova did not provide Fuel Medical with "contractual notice of termination." Dkt. 35 ¶ 54.

Fuel Medical misreads Section 5.01 of the Supply Agreement. Fuel Medical claims Sonova was entitled to withhold Revenue Sharing Payments in the event of a termination under Section 2.02 ("Termination Without Cause") or 2.03 ("Termination With Cause"). The Agreement permits Sonova to withhold a portion of Revenue Sharing Payments "in the event of a notification of termination" of the Agreement. The agreement does not specify that a party must provide a notification of termination independently of the expiration of the Term to which the parties expressly agreed in Section 2.01.

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 6
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

Fuel Medical's interpretation of Section 5.01 does not make sense because it would mean that parties planned for how to calculate and reconcile any necessary adjustments to the Revenue Sharing Payments in the event of a termination prior to the end of the Term, but not in the event of a termination at the known expiration of the Term. Here, both parties had notification of termination of the Agreement when they entered the final extension agreement specifying the Supply Agreement's Term would expire on September 15, 2022 if the parties did not reach agreement on renewal. Dkt. 35 ¶ 36. Further, on September 15, 2022, Sonova informed Fuel Medical it would not enter any further extensions and would allow the Supply Agreement to expire on its own terms. *Id.* ¶ 37. Accordingly, as of that date, the Agreement terminated and Sonova was entitled to withhold a portion of the Revenue Sharing Payments pursuant to the terms of Section 5.01.

Additionally, even if Fuel Medical's interpretation of the notice of termination requirement were somehow correct, Fuel Medical would not be entitled, under any circumstances, to a return of the entire $500,000 Holdback. Fuel Medical fails to acknowledge that Section 5.01 establishes that Revenue Sharing Payments are based only on Net Revenue, which is defined as "gross purchases of hearing aids and accessories less returns, refunds, allowances, discounts of any nature and promotions." Quite simply, Net Revenue is ***net*** of refunds, returns, and allowances for non-payments. The Supply Agreement also expressly provides that Fuel Medical is not entitled to Revenue Sharing Payments paid on Net Purchases where full payment is not received within a specified period of time. Thus, in no event may Fuel Medical keep Revenue Sharing Payments for sales where the products were returned or refunded or for which Sonova does not receive payment within 120 days of the date of invoice. Not permitting the necessary offsetting of returns and unpaid invoices from the Revenue Sharing Payments upon the natural expiration of the Agreement would result in an unintended and unwarranted windfall to Fuel Medical.

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT  - 7
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

The Supply Agreement entitles Sonova to withhold a portion of the final Revenue Sharing Payments due to Fuel Medical until the Net Revenue and past due invoice amounts are accurately calculated. To the extent Fuel Medical intends to allege Sonova has failed to accurately calculate the Net Purchases, its claim should be one for an accounting; accordingly, its claim for breach of contract (Count I) should be dismissed.

**B.  FUEL MEDICAL FAILS TO REMEDY THE FATAL DEFECTS IN ITS ORIGINAL FRAUD CLAIM; IT STILL RELIES EXCLUSIVELY ON SONOVA'S ALLEGED MISREPRESENTATIONS OF FUTURE INTENTION (COUNT II).**

Fuel Medical's fraud allegations remain substantively unchanged in its Amended Complaint, despite the Court's plain holding that those allegations were insufficient to state a claim for fraud. Fuel Medical's amended allegations do not remedy the fatal flaws of its fraud claim, and it should therefore now be dismissed with prejudice.

Under Washington law,[1] a plaintiff must show, *inter alia*, a misrepresentation "of an **existing fact**." *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166 (2012) (emphasis added). A statement as to future performance is not a representation of an existing fact and, therefore, cannot support a claim for fraud. *Shook v. Scott*, 56 Wn. 2d 351, 355 (1960).

The Court dismissed Fuel Medical's fraud claim from its original complaint because it was "based primarily on alleged statements as to future performance." Dkt. 22 at 14. Fuel Medical does not remedy that fatal problem in its Amended Complaint. Its fraud claim is still based only on alleged representations of some future intention, prediction, or desire that the parties will reach a renegotiated agreement. *See* Dkt. 35 ¶ 29 (Jason Mayer "was supportive of the Fuel relationship and represented that the Parties were on track to enter a new agreement"); ¶ 31 (Monica Murray said Sonova would "never drop Fuel Medical without notice"); ¶ 32 (Greg Guggisberg "repeatedly assured Fuel Medical that a new contract was imminent"); ¶ 33 (Arnd

---

[1] In its motion to dismiss the original complaint, Sonova argued that Washington law applies to the fraud claim, and the Court agreed. Dkt. 22, n. 4.

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 8
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

Kaldowski said that Sonova "wanted to address the 'next ten years' with Fuel Medical"); ¶ 60 ("Sonova repeatedly assured Fuel Medical that it *intended* to renegotiate a new supply agreement with Fuel Medical.") (emphasis added); ¶ 63 ("[Sonova] would never think of leaving [Fuel Medical]").

"Where the fulfillment or satisfaction of the thing represented depends upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an existing fact." *Shook*, 56 Wn.2d at 355. Each of the alleged representations in the Amended Complaint depend upon the occurrence of a future event or some future action by Sonova—*i.e.*, that Sonova would ultimately enter into a new agreement with Fuel Medical. Thus, they are not representations of an existing fact and cannot support a claim for fraud.

Fuel Medical's fraud claim also fails because it does not establish how the allegedly fraudulent statements were false. *See Elcon Const., Inc.*, 174 Wn. 2d at 166 ("falsity" is a required element of a fraud claim). In fact, Fuel Medical's allegations, taken as true, establish that, at various points in time, Sonova *did* intend to renegotiate a new supply agreement. *See* Dkt. 35, ¶¶ 23-26. Indeed, the parties extended the term of the Supply Agreement eight times to allow for continued negotiations. *Id.* ¶¶ 24-31, 35-36. The Amended Complaint does not specifically allege how each alleged representation was false and Fuel Medical's fraud claim fails as a result.

Moreover, despite having the opportunity to replead and supplement its allegations, Fuel Medical still fails to satisfy the pleading requirements for a fraud claim under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), fraud must be pled with particularity and must state the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1271 (W.D. Wash. 2010). Fuel Medical does not allege the location in which any of the alleged statements occurred, nor does it allege the time or specific content of many of the

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 9
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

alleged statements. *See* Dkt. 35 ¶ 32 (no specifics as to time and specific content of alleged statement); ¶¶ 29, 32, 33, 60, 63 (no specific allegations as to location). Fuel Medical's allegations are insufficiently detailed under Rule 9(b) and should therefore be dismissed.

C. **FUEL MEDICAL'S ALLEGATIONS FAIL TO STATE CLAIMS FOR BREACH OF THE SUPPLY AGREEMENT'S CONFIDENTIALITY PROVISION (COUNT III) AND BREACH OF THE NDA (COUNT IV).**

1. Fuel Medical's new allegations fail to distinguish the "pricing tier information" from the "pricing templates" contemplated by the Supply Agreement and Sonova's own pricing.

This Court ordered Fuel Medical to explain how the "pricing tiers" in question were distinct from the "pricing templates." Fuel Medical not only fails to do so, it concedes that the pricing tiers are the same as the pricing templates and repeats its vague allegations that "information related to its pricing tiers" was confidential. *See* Dkt. 35 ¶¶ 67-82. These claims (Counts III & IV), as alleged in the Amended Complaint, suffer from the same fatal defects as Fuel Medical's original claims for breach of the confidentiality provision and NDA.

In its order dismissing Fuel Medical's first complaint, this Court provided guidance as to what was necessary for these claims to survive. Specifically, the Court held that Fuel Medical "must allege specific, non-conclusory facts explaining (1) what, exactly, 'pricing tiers' are, (2) how both the discounts and 'pricing tiers' in question are distinct from the 'pricing templates' contemplated by the Supply Agreement, and (3) why both the discounts and 'pricing tiers' in question were, in fact, confidential" and subject to the terms of the NDA. Dkt. 22 at 18-20. Fuel Medical's new allegations do not satisfy any of those requirements.

Rather than explaining how the "pricing tiers" are distinct from the "pricing templates" addressed in the Supply Agreement, Fuel Medical's new allegations acknowledge that they are one and the same. Indeed, in paragraph 14 of the Amended Complaint, Fuel Medical uses the terms "pricing tier" and "strategic pricing templates" interchangeably. Dkt. 35 ¶ 14. Additionally, Fuel Medical alleges that "Fuel Medical and Sonova worked together to set prices for the tiers." *Id.* ¶ 49. That allegation is consistent with Section 4.02 of the Supply Agreement,

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 10
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

which provides that "[Sonova] *and* Fuel Medical shall establish and maintain pricing templates for the Network Members. Fuel Medical *and* [Sonova] may, from time to time, change the strategic pricing templates by mutual written ***agreement of both parties***." *Id.*, Ex. A § 4.02 (emphasis added). Under the Supply Agreement, any "pricing tier information" was not Fuel Medical's proprietary or confidential information. It was Sonova's own information—i.e., "***its*** published list prices"—which Sonova could change at any time in its discretion. *Id.*

To the extent Fuel Medical tries to argue its alleged "pricing tier information" are distinct from the "pricing templates," it relies on conclusory allegations that conflict with the express terms of the Supply Agreement. Fuel Medical goes so far as to allege that "the prices ultimately charged to Fuel Medical's members are determined by Fuel Medical's proprietary tier system, and not by Sonova." Dkt. 35 ¶ 49. The express terms of the Supply Agreement, however, provide that Sonova had the right to change its prices unilaterally at any time, and that Sonova was exclusively responsible for invoicing Network Members directly. Ex. A §§ 4.02, 4.03. The Supply Agreement, which controls over Fuel Medical's contradictory allegations, demonstrates that, at all times, Sonova had access to and control over the product pricing information it charged Network Members. *See Bakke v. Clark Cnty. Jail*, 2015 WL 603528, at *1 (W.D. Wash. Oct. 15, 2015) ("[I]f an exhibit attached to a complaint contradicts an assertion in the complaint and reveals information that prohibits recovery as a matter of law, the information provided in the exhibit trumps the allegation in the complaint.").

Further, if Fuel Medical's allegations were true and the pricing information used to charge Network Members for Sonova's products was Fuel Medical's confidential and proprietary information, it would lead to an absurd result. The necessary implication of those allegations would be that Sonova does not have control over the prices it charges its customers for its own products. As a practical matter, it would mean that Sonova is prohibited from making decisions about the pricing it offers to various customers for its products upon the expiration of

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 11
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

its contractual relationship with Fuel Medical. Such a result would effectively preclude Sonova from continuing to sell its products to customers who happen to be in Fuel Medical's network.

The terms of the Supply Agreement establish that any "pricing tier information" was not Fuel Medical's information. Sonova had the right to change its prices at any time in its discretion, and Sonova and Fuel Medical collaborated to establish the pricing templates—*i.e.*, the "pricing tiers"—into which Network Members were placed. Sonova's use of its own pricing information cannot serve as the basis for a claim for breach of the Supply Agreement's confidentiality provision or the NDA. Accordingly, Counts III and IV should be dismissed with prejudice.

> 2. To the extent the "pricing tier information" is something other than Sonova's pricing and the "pricing templates," Fuel Medical's claims fail because they do not sufficiently identify the confidential information at issue.

Fuel Medical concedes the pricing tier information is the same as the pricing templates. If it attempts to argue otherwise, its claim still must fail because then the Amended Complaint fails to explain what, exactly, the "pricing tier information" is. Despite the Court's clear admonition, Fuel Medical still relies on vague and conclusory allegations that are insufficient to survive under Rule 12(b)(6). *See* Dkt. 22 at 19 (Court's instruction that "Fuel Medical must allege specific, non-conclusory facts explaining (1) what, exactly, 'pricing tiers' are").

Throughout its Amended Complaint, Fuel Medical employs ambiguous descriptions of and references to its "confidential and proprietary tier-based pricing," "proprietary pricing system," and the "proprietary combination of factors." *See, e.g.*, Dkt. 35 ¶¶ 14, 46-47, 68. Those descriptions do not provide the detail necessary for Sonova to understand and identify the information at issue, or the manner in which Sonova is alleged to have obtained and improperly used that information. Accordingly, Fuel Medical's allegations relating to the confidential information are insufficient to state claim under Rule 12(b)(6). *See Cascade Designs Inc. v. Windcatcher Tech. LLC*, No. 15-cv-1310, 2016 WL 374564, at *3 (W.D. Wash. Feb. 1, 2016) ("A complaint must identify the confidential information that was allegedly disclosed to survive

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 12
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

a 12(b)(6) motion.") (cleaned up); *Int'l Quality & Productivity Center/Penton Learning Sys., LLC v. Eck*, 1999 WL 35353, at *6 (N.D. Ill. Jan. 11, 1999) (dismissing counterclaim where defendant "failed to identify any details regarding" regarding the confidential information at issue); *cf. Wiggins v. Physiologic Assessment Servs. Inv.*, 141 A.3d 1058, 1065 (Del. Super. Ct. 2016) (denying motion to dismiss where defendant "devoted an entire section of its counterclaim" to listing and specifying the confidential information at issue).

### D.   FUEL MEDICAL'S CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS (COUNT VI) FAILS FOR MULTIPLE REASONS.

Fuel Medical alleges that "Sonova was not authorized to retain or use Fuel Medical's trade secret information, including its pricing tiers," but that "Sonova has used Fuel Medical's pricing tiers to compete directly with Fuel Medical by selling to Fuel Medical's network and Fuel Medical's contractors." Dkt. 35, ¶¶ 90-91. This claim fails for the multiple reasons, including the same reasons that its claims for breach of the Supply Agreement's confidentiality provision and NDA fail.

    1.   The alleged "pricing tier information" is not trade secret information under the Washington Uniform Trade Secrets Act.

Information cannot constitute a "trade secret" under the WUTSA[2] if it is "readily ascertainable by proper means" from a source other than the purported owner of the information. *Boeing Co. v. Sierracin Corp.*, 108 Wn. 2d 38, 48, 738 P.2d 665, 674 (1987) (citing RCW 19.108.010(4)(a)). The "pricing tier information" described in the Amended Complaint is not a trade secret because it was readily ascertainable to Sonova at all times.

As set forth in detail above, the Supply Agreement provides that Sonova had the right to change its prices at any time in its discretion, and that Sonova was responsible for invoicing all Network Members directly. Dkt. 35, Ex. A §§ 4.02, 4.03. Thus, Sonova always had access to the

---

[2] Fuel Medical's complaint does not reference WUTSA and appears to attempt to state a common law claim for trade secret misappropriation. Regardless of whether Fuel Medical specifically cites the statute, it must satisfy WUTSA's requirements to state a claim. *See* RCW 19.108.100 (WUTSA displaces common law pertaining to civil liability for misappropriation of a trade secret).

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 13
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

"pricing tier information" because it created that information—*i.e.*, the prices it charged to Fuel Medical's members—and Sonova owned it.

Similarly, the express terms of the Supply Agreement belie Fuel Medical's allegations that "Fuel Medical only provides its pricing to specific clients or contractors after taking reasonable steps to maintain the secrecy of the pricing information," and that "Sonova agreed that Fuel Medical's pricing and pricing model was Confidential Information" *Id.* ¶¶ 87-88; *see Bakke*, 2015 WL 6032508, at *1 (exhibits control over contrary allegations in the complaint). Pursuant to the Supply Agreement, Fuel Medical and Sonova collaborated and agreed upon the strategic pricing offered to Network Members. *Id.* Ex. A §§ 4.02, 4.03. The "tiers" or "templates" and the corresponding pricing were readily available to Sonova through proper means because they were developed **by Sonova**.  Accordingly, the alleged "pricing tier information" cannot serve as the basis for a trade secret misappropriation claim. *Boeing*, 108 Wn.2d at 48, 738 P.2d at 674.

  2. Alternatively, Fuel Medical's allegations regarding the alleged trade secrets at issue are fatally vague.

To the extent that Fuel Medical attempts to contend the "pricing tier information" is something other than the "pricing templates" covered by the Supply Agreement and Sonova's own list prices, the Amended Complaint fails to identify sufficiently the trade secrets Sonova allegedly misappropriated. "While a plaintiff need not disclose its alleged trade secrets in such detail that it would result in public disclosure of those trade secrets, they must sufficiently identify those alleged trade secrets such that the other party is on notice of what it is alleged to have misappropriated." *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, No. 22-cv-825, 2022 WL 4534422, at *7 (W.D. Wash. Sept. 28, 2022). Fuel Medical vaguely alleges that Sonova misappropriated its "pricing tier information," but does not provide any further detail as to what specific information would constitute a trade secret.

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 14
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

The complaint's ambiguous references to "pricing tier information" are inadequate to put Sonova on notice of the trade secret Fuel Medical alleges it took, especially in light of the fact that Sonova was, at all times, in control of the prices it charged to its customers. Accordingly, Fuel Medical's trade secret misappropriation claim should be dismissed. *See Bombardier v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019) (complaint must "identify the trade secret with sufficient particularity to permit the defendant to ascertain at least the boundaries within which the secret lies"); *see also Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (plaintiffs "must *clearly refer* to tangible trade secret material" rather than referring to material "which *potentially* qualifies for trade secret protection") (emphasis orig.).

### E. THE SUPPLY AGREEMENT EXPRESSLY BARS FUEL MEDICAL FROM SEEKING PUNITIVE DAMAGES (COUNT II), EXEMPLARY DAMAGES (COUNT V), OR CONSEQUENTIAL DAMAGES (COUNT IV).

Fuel Medical requests punitive damages as part of its prayer for relief for its fraud claim and exemplary damages as part of its prayer for relief for its misappropriation of trade secrets claim. Dkt. 35 at 22, subparagraphs (b) & (e). The Supply Agreement, however, expressly precludes either party from seeking any "special, exemplary, punitive, or consequential damages" in any "suit, action, or proceeding . . . on or with respect to this Agreement or the dealings of the parties with respect hereto." *Id.*, Ex. A § 7.06; *see also id.* § 7.20 ("Notwithstanding anything to the contrary set forth herein, in no event shall either party hereto be entitled to punitive, consequential or speculative damages, including damages for lost profits."). Contractual provisions restricting the availability of punitive and exemplary damages are regularly enforced under Delaware law. *See, e.g.*, *O'Neill v. AFS Holdings, LLC*, No. N13C-02-189, 2014 WL 626031, at * 5 (Del. Super. Ct. Jan. 15, 2014); *Rob-Win, Inc. v. Lydia Security*

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 15
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

*Monitoring, Inc.*, No. 04C-11-276, 2007 WL 3360036, at *4 (Del. Super. Ct. Jan. 16, 2007).[3] Thus, Fuel Medical's prayers for punitive and exemplary damages should be dismissed.

Fuel Medical also seeks consequential damages as part of its prayer for relief for its claim for breach of the NDA. *See, e.g.,* Dkt. 35 at 22, subparagraph (d). The parties, however, waived any rights to collect consequential damages as part of the Supply Agreement. *Id.*, Ex. A § 7.06 (waiving "any right to it may have to claim or recover . . . consequential damages"). The Court should therefore dismiss Fuel Medical's requests for such damages. *See* Dkt. 1 at subparagraphs (a), (b), (d), & (g); *Yellow Book USA v. Sullivan*, No. 1999-02-046, 2003 WL 1848650, at *7 (Del. Ct. of Comm. Pleas Feb. 20, 2003) (enforcing contractual provision barring damages for lost profits).[4]

WHEREFORE, for the reasons stated above, Sonova USA Inc. respectfully requests the Court dismiss Fuel Medical Group, LLC's complaint with prejudice and grant such other relief if just.

---

[3] Washington law reaches the same result; "punitive damages are not allowed unless expressly authorized by the legislature." *Barr v. Interbay Citizens Bank of Tampa, Fla.*, 96 Wn.2d 692, 635 P.2d 441, 443 (1981); *Steel v. Johnson*, 76 Wn.2d 750, 458 P.2d 889, 890 (1969). This is also true of exemplary damages because "'[e]xemplary damages' are synonymous with 'punitive damages.'" *Hill v. Garda CL N.W., Inc.*, 191 Wn.2d 553, 424 P.3d 207, 217 (2018) (citing Black's Law Dictionary 692 (10th ed. 2014)).

[4] Here again, the Washington law reaches the same result. *See Revolutionar, Inc. v. Gravity Jack, Inc.*, 2020 WL 2042965, at *15-16 (Wash. Ct. App. 2020) (enforcing contractual release of any claims seeking lost profits).

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 16
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

1     DATED this 15th day of September, 2023.

2

        Respectfully submitted,

3

        s/ *Brian W. Esler*

4         Brian W. Esler, WSBA No. 22168
        Lane Conrad, WSBA No. 59287

5         Miller Nash LLP
        605 5th Ave S, Ste 900

6         Seattle, WA 98104
        Telephone: (206) 624-8300

7         Email: brian.esler@millernash.com
        Email: lane.conrad@millernash.com

8

9         Ian H. Fisher, admitted *pro hac vice*
        Paul J. Coogan, admitted *pro hac vice*

10        Taft Stettinius & Hollister LLP
        111 East Wacker Drive, Suite 2600

11        Chicago, IL 60601
        Telephone: (312) 527-4000

12        Email: ifisher@taftlaw.com
        Email: pcoogan@taftlaw.com

13

14        Attorneys for Plaintiff Sonova USA Inc.

15

16        I certify that this memorandum contains 5,292 words, in compliance with the Local Civil Rules.

17

18

19

20

21

22

23

24

25

26

DEFENDANT SONOVA USA INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 17
(Case No. 3:22-cv-05934-BHS)

4864-6409-7664.1

**Miller Nash LLP**
605 5th Avenue S, Suite 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

DATED this 15th day of September, 2023.

*/s/ Kristin Martinez Clark*
Kristin Martinez Clark

CERTIFICATE OF SERVICE
(Case No. 3:22-cv-05934-BHS)

Miller Nash LLP
605 5th Avenue S, Suite 900
Seattle, WA  98104
206.624.8300 | Fax: 206.340.9599

4864-6409-7664.1