The Honorable  Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| FUEL MEDICAL, LLC, a Washington limited liability company, | Lead Case No. 3:22-cv-05934-BHS |
| Plaintiff, | |
| v. | |
| SONOVA USA, INC., a Minnesota corporation; SONOVA HOLDING AG, a Swiss company, | |
| Defendants. | |
| SONOVA USA, INC., a Minnesota corporation, | Consolidated Case No. 3:23-cv-05544 |
| Plaintiff, | **FUEL MEDICAL, LLC'S MOTION TO DISMISS SONOVA USA, INC.'S FIRST AMENDED COMPLAINT** |
| v. | |
| FUEL MEDICAL, LLC, a Washington limited liability company, | **NOTE ON MOTION CALENDAR: DECEMBER 1, 2023** |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

## MOTION

Fuel Medical, LLC ("Fuel Medical") moves under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for an order dismissing both claims in Sonova USA, Inc.'s ("Sonova") First Amended Complaint ( "Sonova's FAC" [ECF No. 39]).  Sonova's fraud claim should be dismissed with prejudice and without leave to amend, and its declaratory judgment claim should either be dismissed with prejudice or filed in conjunction with a responsive pleading to Fuel

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 1 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Medical's complaint in these consolidated cases.

This motion is supported by the memorandum below, any reply memorandum Fuel Medical may file, the pleadings, papers, and other documents on file in this action, and such other points and authorities presented to the Court at or prior to any hearing in this matter.

**MEMORANDUM**

**I.     INTRODUCTION**

Sonova's FAC should be dismissed because its claim for "fraud" against Fuel Medical cannot stand in the face of the parties' written Supply Agreement.  Sonova describes itself as a "global leader" in the manufacturing of hearing care instruments—rightfully characterizing itself as the large-scale, sophisticated business entity it is.  Yet Sonova's newly concocted fraud claim against Fuel Medical is necessarily premised on the opposing, and inaccurate, presentation of Sonova as an *un*sophisticated party that is unable to negotiate a contract in the normal course of business. Sonova alleges that it relied to its detriment on a number of ambiguous oral statements at meetings and conferences regarding who "owned" Fuel Medical; that these ambiguous oral statements constitute fraud, because Sonova would have terminated the Supply Agreement had it discovered that Fuel Medical had a "competitor" as a minority owner; and that it was damaged, in part, because it lost out on profits by paying Fuel Medical's "lucrative pricing."  Each of these allegations is baseless.

The Supply Agreement itself evidences that Sonova knows how to negotiate commercial contracts—and it is this agreement (which Sonova negotiated) that cuts off spurious claims like the one Sonova is trying to bring now.  The Supply Agreement makes no promises regarding Fuel Medical's ownership structure.  (*See* Sonova's FAC, Ex. A (Supply Agreement § 7.01) [ECF No. 39 at 36 of 94].)  In fact, the Supply Agreement permits and anticipates that Fuel Medical could go even further than it did and engage in a change-in-control transaction—i.e., each party was permitted, in a change-of-control context, to change ownership without sign-off by the other party and without any broader effect on the Supply Agreement.  (*See* Supply

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 2 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Agreement § 7.07 [*id.* at 40 of 94].)  Moreover, and fatal to Sonova's claim here, the parties

expressly disclaimed reliance on any statements or omissions by the other.  (*See* Supply

Agreement § 7.23 [*id.* at 42–43 of 94 (each party "represents that it has executed [the Supply

Agreement] based on its own knowledge and its own investigation of the facts, and that it has not

executed this document in reliance upon any statement or omission of any person connected

with, representing or represented by the other party to this Agreement.").)  The parties reaffirmed

this disclaimer each of the *eight* times they entered a contract extension.  (*See* Sonova's FAC,

Group Exs. D & E [ECF No. 39 at 56–75 of 94].)  Sonova's fraud claim fails by its own

representations and acknowledgements in these written agreements.

Sonova's alleged damages on its fraud claim are also too speculative to state a claim for

relief and are precluded by the terms of the Supply Agreement.  Sonova's FAC suggests that, had

Sonova known that Fuel Medical's third member was a "competitor," Sonova would have tried

to profit *more* from sales to Fuel Medical's members—all of whom operate ear, nose, and throat

practices.  Sonova's fraud claim relies entirely on conjecture, and is nothing less than "payback"

for Fuel Medical's decision to assert its rights under the parties' contracts (i.e., sending a demand

letter to Sonova and subsequently filing a complaint for breach of the Supply Agreement).  The

claimed damages are also not allowed under the limitation of liability provision of the Supply

Agreement.  (*See* Supply Agreement § 7.20 [*id.* at 14 of 94].)

In short, Sonova's fraud claim fails to plead facts with the requisite specificity, and more

importantly, does not adequately satisfy several of the nine elements of a fraud claim under

Washington law.  Additionally, Sonova's claim for declaratory relief is simply the negative

mirror image of Fuel Medical's claims, and, thus, there is no basis for such claim to stand.  The

Court should therefore dismiss Sonova's FAC in its entirety.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6) Standard

Dismissal pursuant to Rule 12(b)(6) "can be based on the lack of a cognizable legal

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 3 -

theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).  To survive a Rule 12(b)(6) motion to dismiss, a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 544).  "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557) (brackets omitted in original).  A court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles ("LA") Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Still, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Id.* (citing *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002) (internal quotations omitted)).

### B.      Federal Rule of Civil Procedure 9(b) Standard

A court should dismiss a fraud claim if the allegations fail to state the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Segal Co. (E. States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) (quoting Fed. R. Civ. P. 9(b)).  "General or conclusory allegations of fraud are insufficient to defeat a motion to dismiss." *Id.*

## III.    FACTUAL ALLEGATIONS

As noted above, for purposes of this motion, the Court is to assume as true the facts in the complaint, except to the extent they are conclusory or contain unwarranted inferences.

/ / /

FUEL MEDICAL, LLC'S MOTION TO DISMISS SONOVA USA, INC.'S FIRST AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 4 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

A. **The Supply Agreement.**

The various iterations of the parties' contract have been set forth before the Court in several briefs. In summary, "[o]n August 23, 2010 . . . [Fuel Medical] entered a supply agreement with Phonak, LLC ("Phonak"), which later became Sonova." (Sonova's FAC ¶ 11.) "On or about March 1, 2017, Phonak and its sister company, Unitron Hearing, Inc. ('Unitron'), entered a new supply agreement with [Fuel Medical] (the 'Supply Agreement'). (*Id.* ¶ 12.) Sonova and Fuel Medical Group executed a First Amendment to the Supply Agreement effective as of March 1, 2017, acknowledging that Sonova was the successor-in-interest to Phonak and that Unitron had merged into Sonova, among other things.[1] (*Id.*, Ex. B [ECF No. 39 at 48 of 94].)

The Supply Agreement is a fully integrated document that "replaces and supersedes any and all prior arrangements and understandings." (Supply Agreement § 7.15 [*id.* at 41 of 94].) Each party to the Supply Agreement made certain representations and warranties. (*See id.* §§ 7.01, 7.02 [*id.* at 39–40 of 94].) None of Fuel Medical's representations or warranties involved its ownership structure or constituency, beyond requiring it to be "a duly organized and existing limited liability company under the laws of the state of Washington." (*Id.* § 7.01(i) [*id.* at 39 of 94].) Fuel Medical made no representations regarding its affiliation (or absence of affiliation) with any other manufacturer. (*See id.* § 7.01 [*id.*].)

In addition to the express representations and warranties in section 7.01, each party to the Supply Agreement expressly represented that it "ha[d] been counseled independently by its attorneys concerning the meaning and legal effect of the terms of [the Supply Agreement]," that it "fully under[stood] the [Supply Agreement] and its terms, and, with this full understanding, voluntarily entere[d] into [the Supply Agreement]." (*Id.* § 7.23 [*id.* at 42–43 of 94].) Each further represented "that it ha[d] executed [the Supply Agreement] based on its own knowledge

---

[1] The Supply Agreement refers to Unitron and Phonak as "Supplier." For clarity, Fuel Medical refers to Supplier as Sonova in this motion.

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 5 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1   and its own investigation of the facts, and that it ha[d] not executed [it] in reliance upon any

2   statement or omission of any person connected with, representing or represented by the other

3   party[.]"  (*Id.*)

4          The initial term of the Supply Agreement was for three years, with two automatic one-

5   year renewal terms (together, the "Original Term").  (*Id.* § 2.01 [*id.* at 30 of 94]; Sonova's FAC ¶

6   18.)  The Supply Agreement gave both parties the right to terminate without cause upon 180

7   days' notice.  (Supply Agreement § 2.02 [*id.* at 30–31 of 94].)

8          Neither party could assign rights under the Supply Agreement without the other party's

9   express written consent, with one exception:  either party could assign the agreement upon a

10   party's Change of Control (as defined in the Supply Agreement).  (*Id.* § 7.07 [*id.* at 40 of 94].)

11   In other words, the Supply Agreement contemplated that either party could have a change of

12   ownership (if not outright control), without otherwise having an effect on the Supply Agreement.

13   (*See id.*)

14          The Supply Agreement also was not exclusive.  Sonova had the right, "in its sole

15   discretion," to sell products to any other parties for resale.  (*Id.* § 3.04 [*id.* 31–32 of 94].)  For its

16   part, Fuel Medical retained "the right, in its sole discretion to establish new and/or maintain any

17   supply, marketing, licensing, sales or other agreements with any Person."  (*Id.*)

18   **B.     Communications regarding Fuel Medical's ownership during the Term of
           the Supply Agreement.**

19          Although the Supply Agreement and its rebate and payment structure was in place in

20   March 2017 and reaffirmed repeatedly through September 7, 2022, Sonova argues that Fuel

21   Medical's interim representations regarding its ownership structure constitutes a

22   misrepresentation that Sonova relied upon to continue under the Supply Agreement, including by

23   continuing to send payments owed to Fuel Medical.[2]  Sonova's FAC lists in ten paragraphs

24

25   _____

[2] Sonova's timing here is vague.  Sonova alleges that "[h]ad Fuel not entered into the Supply
Agreement with Sonova by fraudulently misrepresenting its ownership, Sonova would have
26   agreed to [different financial terms]," suggesting Sonova may be alleging misrepresentations
prior to March 2017.  (Sonova's FAC ¶ 96.)  However, Sonova points to no alleged
misrepresentations prior to 2018, more than a year after execution of the Supply Agreement.

FUEL MEDICAL, LLC'S MOTION TO                    - 6 -
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

reassuring statements that it alleges Fuel Medical's majority owners made between September 2018 and 2022, such as, "Fuel is not owned by Oticon,"[3] (Sonova's FAC ¶ 91.)  Fuel Medical denies these allegations, but, even if they were true, the statements do not constitute actionable fraud, as set forth in more detail below.

**C.      Supply Agreement extensions pending attempted renegotiation.**

While attempting to negotiate a contract to govern their relationship beyond the term in the Supply Agreement, the parties extended the Supply Agreement by amendment eight separate times between February 28, 2022, and September 7, 2022, which was, in total, a roughly six-month period (together, the "Extension Amendments").  (Sonova's FAC, Group Exs. D & E [ECF No. 39 at 56–75 of 94.)  Each of the eight Extension Amendments expressly stated that the terms of the Supply Agreement "will remain in full force and effect and" were "ratified and confirmed by the parties" except as expressly provided in each amendment.  (*Id.*)  None of the Extension Amendments provided for the addition of a representation regarding Fuel Medical's ownership, affiliations, or independence from Sonova's competitors, or any negation of each party's disclaimer of reliance on any statement or omission of the other party.  (*See id.*)  The Supply Agreement expired of its own terms on September 15, 2022.  (Court's Order (Jun. 9, 2023) [ECF No. 22] at 10.)

**D.      Sonova's allegations regarding consequential lost-profit damages.**

The Supply Agreement provides that "in no event shall either party hereto be entitled to punitive, consequential, or speculative damages, including damages for lost profits."  (Supply Agreement § 7.20 [ECF No. 39 at 42 of 94].)  Nevertheless, Sonova asserts that had it "known"

---

Additionally, Sonova does not allege that Fuel Medical's ownership structure itself constitutes a breach of the Supply Agreement (presumably because Sonova knows that it does not).

[3] Again, Sonova's allegations as to time are vague.  Sonova does not allege when Oticon (the alleged "competitor" of Sonova, and now the third member of Fuel Medical) became a minority member of Fuel Medical, nor does Sonova allege what it means to "own" Fuel Medical. Although not necessary for resolution of this motion, for the sake of completeness, Oticon did not become a minority member of Fuel Medical until years after the original supply agreement was entered.  Oticon remains a minority member of Fuel Medical to this day.  Two Washington residents—Mr. Shawn Parker and Mr. Brendan Ford—are the majority owners.

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 7 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

about Fuel Medical's membership change, Sonova would have at some point renegotiated the

pricing structure of the Supply Agreement.  Sonova does not allege when that "point" would

have been reached.  Sonova then contends that had Fuel Medical hypothetically agreed to terms

like those Sonova has with other parties (instead of the terms Sonova negotiated for and actually

agreed to with Fuel Medical), and had Fuel Medical theoretically performed exactly as well as it

did under the actual Supply Agreement, then there is a chance that Sonova "would have paid

Fuel nearly fifty million dollars less over the five and a half years the Supply Agreement was in

effect." (Sonova's FAC ¶ 96.)  Further, had that been the case, Sonova "would not have agreed

to cover expenses, such as promotional events and marketing consulting, for [Fuel Medical] and

its network members." (*Id.*)  As detailed below, this speculative, hypothetical exercise should

not be credited by the Court.

## IV.    ARGUMENT

Sonova's fraud claim is based on ambiguous and vague alleged communications from

Fuel Medical—communications on which Sonova expressly represented it was not relying *nine*

times (both before and after the purported communications).  If Sonova actually cared about Fuel

Medical's ownership, such that it would affect Sonova's willingness to contract with Fuel

Medical, Sonova could have required a representation or warranty in either the Supply

Agreement or in any of the *eight* subsequent amendments in which Sonova ratified and

confirmed the Supply Agreement's terms; but, Sonova never did so.  In the absence of having

negotiated such a representation or warranty, it becomes clear that Sonova has merely conjured

up an after-the-fact-claim-for-litigation.  Further, the Supply Agreement contradicts Sonova's

assertion that it is entitled to any consequential or speculative damages.  Given that Sonova's

entire fraud theory depends on contradicting the Supply Agreement's plain terms, Sonova cannot

cure these deficiencies on amendment, and the claim should therefore be dismissed with

prejudice.

/ / /

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 8 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Sonova's claim for declaratory relief is also improper as a separate claim in this case. In its attempt to forum shop, after receiving a demand letter from Fuel Medical, Sonova filed a preemptory declaratory judgment action in Illinois State Court. That matter has now been removed and transferred to this Court, which is the proper forum. The declarations that Sonova now seeks are, in effect, defensive—i.e., Sonova seeks a declaration that it "did not" do things that Fuel Medical accuses Sonova of doing in Fuel Medical's complaint. Accordingly, Sonova's claimed relief (if any) should be brought (if at all) in response to Fuel Medical's case, and not in a separate complaint, as the cases have already been consolidated.

### A.      Sonova fails to plead a plausible fraud claim.

Fuel Medical denies that Brendan Ford ("Mr. Ford") or Shawn Parker ("Mr. Parker") made the alleged misrepresentations as stated in Sonova's FAC. But even for purposes of this motion, Sonova fails to state facts which, if taken as true, allow the Court to infer that Fuel Medical is liable to Sonova for fraud. First, Sonova fails to meet the particularity requirements of Rule 9(b). Second, Sonova fails to show (1) that Mr. Ford or Mr. Parker made any material misrepresentation to Sonova; (2) that Sonova actually relied upon any of the alleged statements or omissions, or had a right to rely upon any such representations in light of the plain text of the Supply Agreement and its amendments; (3) that Fuel Medical intended Sonova to act on any of these alleged statements; or (4) that Sonova has suffered any non-speculative damages not otherwise barred by the plain text of the Supply Agreement.

### 1.      Sonova fails to satisfy the requirements of Rule 9(b).

Pleading a claim for fraud requires heightened specificity, including the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Capitol W. Appraisals, LLC v. Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1271 (W.D. Wash. 2010).) Here, while Sonova provides some details surrounding purported misrepresentations, it still fails to state the time, place, and specific content of each alleged representation. For example, Sonova claims fraud based on statements and omissions made in the following alleged circumstances:

FUEL MEDICAL, LLC'S MOTION TO                          - 9 -
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

- An unspecified number of conversations, by unspecified means, "almost" monthly, over a nearly two-year period ending September 15, 2022, (*Id.* ¶¶ 34.g., 91.g.);

- Four telephone conversations sometime in 2019, (*Id.* ¶¶ 34.e., 91.e.);

- An unspecified statement, to an unnamed group of approximately seven people, sometime between October 2019 and January 2020, (*Id.* ¶¶ 34.f., 91.f.);

- "Numerous" conversations in the two years preceding March 21, 2022, (*Id.* ¶¶ 34.i., 91.i.); and

- A Teams call sometime in January 2022, (*Id.* ¶¶ 34.j., 91.j.)

Even if Sonova had plausibly alleged that each of these statements was material and was made with the intent of reliance, and that Sonova did rightfully rely on those statements causing it damages, Rule 9(b) alone would still require dismissing the fraud claim. By way of example and not limitation, Sonova does not state the specific time or substance of any particular statement in connection with the above allegations. But the specifics matter. Otherwise, it is impossible to decipher both when (or if) a statement was actually made and whether a statement was facially true or false (or even subject to such a determination). The allegations in Sonova's FAC do not sufficiently identify the time, place, and specific content of the false representations, and, thus, Sonova fails to satisfy the pleading requirements of Rule 9(b).

### 2.    Sonova fails to state a claim for fraud.

Sonova also has failed to plead facts sufficient to state a claim for relief for fraud. To determine whether a claim for fraud has been adequately pleaded in a diversity action, federal courts apply state law. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Under Washington law, "there are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence." *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 166 (2012). Those elements are:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 10 -

*Id.* (*citing Williams v. Joslin*, 65 Wn.2d 696, 697 (1965)); *see also Baker Boyer Nat'l Bank v. Foust*, 6 Wash. App. 2d 375, 381 (2018) (*citing Pedersen v. Bibioff*, 64 Wash. App. 710, 723 n.10 (1992)).

"Fraud in the inducement exists when the misrepresentation is of a matter or matters that motivate a defendant to enter into the transaction." *Baker Boyer Nat'l Bank*, 6 Wash. App. 2d at 381 (*citing Pedersen*, 64 Wash. App. at 722). While false representations of material fact may give rise to a claim for fraud, liability for omission is narrower. "Ordinarily . . . the duty to disclose a material fact exists only where there is a fiduciary relationship." *Id.* (*quoting Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456, 463–64). It is only "[w]hen a duty to disclose exists" that "the suppression of a material fact is tantamount to an affirmative misrepresentation." *Id.* (*citing Crisman v. Crisman*, 85 Wash. App. 15, 22 (1997)).

Sonova's claim for fraud fails to allege materiality (fraud's second element), the speaker's intent (fraud's fifth element), reliance (fraud's seventh element), Sonova's right to rely (fraud's eighth element), and damages (fraud's ninth element). Specifically: (a) Sonova does not establish that Fuel Medical's ownership was material to the Supply Agreement or that Fuel Medical had any duty to disclose its ownership structure on a continuing basis; (b) Sonova did not rely, and had no right to rely, upon any supposed misrepresentation or omission, and Sonova confirmed it had not, in fact, done so in the Supply Agreement; (c) Sonova does not allege that Fuel Medical intended its statements to be acted upon; and (d) Sonova cannot recover the damages it seeks in light of their speculative nature and the limitation of liability provision in the Supply Agreement.

> **a.   The Supply Agreement's plain text establishes that Fuel Medical's ownership structure and composition was not material.**

Sonova fails to, and cannot, allege the second element of a fraud claim—materiality. While Sonova alleges that a few of its employees may have asked sporadic questions about rumors of Fuel Medical's ownership, Sonova has not sufficiently shown that those questions or

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 11 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Fuel Medical's answers were material to continuing with the parties' Supply Agreement.  To
believe otherwise would implausibly require the Court to ignore the plain language of the Supply
Agreement, the Extension Amendments, and the temporal relationship between the contract's
execution, amendments, and the alleged representations and omissions.  It would also impose a
duty of disclosure on Fuel Medical not provided for, but rather excluded, in the Supply
Agreement.

As an initial matter, the plain text of the Supply Agreement contains no representation or
warranty regarding Fuel Medical's ownership; thus, Fuel Medical's ownership was not material
to the parties' agreement.  (*See, e.g.*, Supply Agreement § 7.15 [ECF No. 39 at 41 of 94] (stating
that the written agreement "constitutes the entire agreement between the parties relating to the
subject matter hereof and replaces and supersedes any and all prior agreements and
understandings").)  The Supply Agreement includes a list of representations and disclaims the
importance on any other statement.  (*See* §§ 7.01, 7.15 [*id.* at 36, 41 of 94].)  None of these
representations pertain to Fuel Medical's ownership by, affiliation with, or independence from
Oticon, Sonova competitors generally, or any other entity or category of entities.  (*See* Supply
Agreement § 7.01(i)-(v) [*id.* at 36 of 94].)  Were Fuel Medical's ownership to matter or to be
"material" for a fraud claim, it would—at minimum—have to have been in the Supply
Agreement.  It was not, and thus was not material.  Sonova's claim fails.

Next, the Supply Agreement minimizes the significance of any ownership of Fuel
Medical, again showing that any representation about Fuel Medical's ownership was immaterial.
Under section 7.07 of the Supply Agreement, neither party could assign its rights or obligations
under the agreement without the other's consent, with one exception:  "either party may assign
its rights and obligations under this Agreement without the other party's consent solely in
connection with a Change in Control of the assigning party or an assigning party's Affiliate,
including Supplier."  (Supply Agreement § 7.07 [*id.* at 40 of 94].)  The phrase "Change of
Control" is defined in Article 1 of the Supply Agreement and includes any "sale or . . . other

FUEL MEDICAL, LLC'S MOTION TO         - 12 -
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

transaction" that results in "any person, entity or group" becoming more than a 50% owner of the capital stock or combined voting power of a party.  (*See* Supply Agreement § 1.01 [*id.* at 29–30 of 94].)  In other words, the Supply Agreement specifically contemplated that Fuel Medical could sell more than a majority of its company or assets to any other person, entity, or group— including a competitor of Sonova—and Sonova could not stop it, but rather would have continuing obligations under the contract.  To be clear, there is no allegation that Fuel Medical did have a Change in Control (and it did not—Oticon is only a minority member), but the fact that Fuel Medical had the right to do so demonstrates that its ownership was immaterial to the parties' Supply Agreement.  Were it otherwise, Sonova would have required consent prior to any Change in Control.  Because Sonova did not negotiate or contract for such a term, it is necessarily the case that Fuel Medical's ownership was not a material term.  Again, Sonova's claim for fraud fails.

The provisions of the Supply Agreement also emphasize that Fuel Medical had no duty to disclose its ownership structure to Sonova on a continuing basis.  Given the Supply Agreement's representations and warranties (which did not require Fuel Medical to make any representation regarding its ownership) and its Change in Control provision (which expressly relieved a party of receiving the other's consent in a case of change of control), Fuel Medical was not under any obligation—let alone a continuing one—to inform Sonova of any change in Fuel Medical's ownership composition.  Additionally, the Supply Agreement was expressly not exclusive, allowing both Sonova and Fuel Medical to supply or sell products from others, including competitors.  (Supply Agreement § 3.04 [*id.* at 31–32 of 94].)  Given the text and purpose of these provisions, Fuel Medical's ownership structure is not relevant—and hence not material—to the Supply Agreement's terms.

Finally, the timing of the Parties' Extension Amendments also demonstrates that Fuel Medical's ownership remained immaterial to Sonova throughout the Supply Agreement's term.  As an initial matter, Sonova only half-heartedly alleges that it was fraudulently induced into

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 13 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1    entering the parties' Supply Agreement in the first instance.  But the list of allegedly misleading

2    statements in Sonova's pleading all post-date the execution of the Supply Agreement by more

3    than one year.  To get around this deficiency, Sonova tries to allege that, were it not for Fuel

4    Medical's statements concerning its ownership structure, Sonova would not have continued

5    operating under the Supply Agreement, or agree to extend its term.  Sonova's attempt fails

6    because it has not identified with particularity when all specific subsequent misrepresentations

7    were made.  The allegations that do contain any specificity assert that Fuel Medical

8    misrepresented its ownership in September 2018, December 2018, or possibly January 2022.

9    However, Sonova agreed to *eight* Extension Amendments to the Supply Agreement, the last of

10   which was signed on September 7, 2022, each of which "ratified and confirmed" the terms of the

11   Supply Agreement.  This means that none of the Extension Amendments affected Fuel Medical's

12   representations and warranties (Supply Agreement § 7.01 [*id.* at 36 of 94]); none of the

13   Extension Amendments altered the fact that the written contract constituted the entire agreement

14   between the parties and superseded any and all prior agreements and understandings (Supply

15   Agreement § 7.15 [*id.* at 41 of 94]); and none of the Extension Amendments altered the

16   assignability of the Supply Agreement in connection with a Change in Control (Supply

17   Agreement § 7.07 [*id.* at 40 of 94]).  Sonova cannot plausibly state a claim for fraud when the

18   Supply Agreement itself establishes that Fuel Medical's ownership structure or composition was

19   immaterial, and when Sonova ratified and affirmed as much both before and after the purported

20   misrepresentations were made.  Sonova's claim for fraud should be dismissed.

21           **b.      The Supply Agreement and the parties' Extension**
22                   **Amendments establish that Sonova had no right to rely, and**
                     **did not rely, on any representation about Fuel Medical's**
23                   **ownership.**

24           Not only does the Supply Agreement establish that any representation about Fuel

25   Medical's ownership was not material, it also shows that Sonova did not rely—and had no right

26   to rely—on any supposed oral representation regarding Fuel Medical's ownership.  Because

FUEL MEDICAL, LLC'S MOTION TO             - 14 -
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT                                    TONKON TORP LLP
Case No. 3:22-cv-05934-BHS                           888 SW Fifth Ave., Suite 1600
                                                     Portland, OR 97204
                                                     503.221.1440

Sonova has not, and cannot, plausibly allege the seventh and eighth elements of a fraud claim, that claim must be dismissed.

Section 7.23 of the Supply Agreement states that each party "represents that it has executed this document based on its own knowledge and on its own investigation of the facts, and that *it has not executed this document in reliance upon any statement or omission of any person* connected with, representing or represented by the other party to this Agreement." (Supply Agreement § 7.23 [ECF No. 39 at 43 of 94] (emphasis added).)  It is difficult to be clearer:  through singing the Supply Agreement, Sonova itself confirmed that it did not rely upon any statement (or omission) of Fuel Medical in connection with executing the Supply Agreement.  Sonova then agreed to a series of Extension Amendments reaffirming its lack of reliance.  Sonova simply cannot prove, nor could it ever plausibly allege, that it relied on any misrepresentation or omission regarding ownership.  Sonova has no claim for fraud.

This Court has previously determined that, under Washington law, sophisticated parties can "head off the possibility of a fraud suit" by inserting a "'no-reliance' clause into their contract, stating that neither party has relied on any representations made by the other."  *See, e.g, FMC Tech., Inc. v. Edwards*, 2007 WL 1725098, at *4 (unpublished) (W.D. Wash. 2007) (citing *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2003)) ("[T]he Court finds that Plaintiffs' fraud claim is barred as a matter of law by the plain 'no-reliance' language of the parties' Settlement Agreement."); *Hawkins v. Empres Healthcare Mgmt., LLC*, 193 Wash. App. 84, 100–01 (2016), as amended on denial of reconsideration (June 8, 2016) (*citing Kwiatkowski v. Drews*, 142 Wash. App. 463, 481–82 (2008) ("A no-reliance clause may negate a plaintiff's right to rely as a matter of law").  In reaching this conclusion, the Court relied upon not only Washington appellate decisions, but also on other consistent cases from both the Ninth and Seventh Circuits.  For example, in *Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477–78 (9th Cir. 1994), the Ninth Circuit applied California law to hold that the "plain and strong words" of a no-reliance clause in a banking contract precluded a fraud claim as a

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 15 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

matter of law, because any reliance could not be "justifiable" in light of the no-reliance clause. Additionally, in *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1155, 1159–60 (9th Cir. 1996), the Ninth Circuit relied on *Bank of the West* when it found that a securities contract's no-reliance clause, which stated that investment decisions were made "without relying on any other Person," went "far to defeat [one party's] . . . claims that [it] did precisely the opposite and relied on [the opposing party]." The Seventh Circuit has explained that, because "reliance is an element of fraud, the [no-reliance] clause, if upheld—and why should it not be upheld, at least when the contract is between sophisticated commercial enterprises—precludes a fraud suit." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 645 (7th Cir. 2003).

Following this authority, the no-reliance clause of section 7.23 of the Supply Agreement—which was ratified and affirmed in each of the eight Extension Agreements (including as late as September 7, 2022)—precludes Sonova's fraud claim as a matter of law. Not only did Sonova have no right to rely on anything Fuel Medical said, Sonova expressly represented that it did not do so by signing the Supply Agreement and the Extension Amendments. Again, Sonova's fraud claim fails, and its defects cannot be cured by any further pleading.

### c. Sonova does not allege that Fuel Medical intended its statements to be acted upon by Sonova.

Sonova also fails to make plausible allegations that Fuel Medical intended that any representation or omission about Fuel Medical's ownership would be acted upon by Sonova— the fifth element of a fraud claim. As a matter of pleading, Sonova has only one substantive allegation that could be characterized as trying to satisfy this element, yet it falls short. Sonova alleges that "Fuel [Medical] knew its representations that it was independent, that it was not affiliated with a manufacturer, and that Oticon had no ownership interest in Fuel were false and that Sonova would reasonably rely on these false representations when negotiating financial terms given to Fuel [Medical]." (Sonova's FAC ¶ 94.) As explained above, each of Sonova's

FUEL MEDICAL, LLC'S MOTION TO
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 16 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

allegations regarding Fuel Medical's purported misrepresentations about ownership post-date the Supply Agreement—i.e., they post-date the parties' negotiation and execution of the financial terms that governed their contracting relationship.  How could Fuel Medical intend action by Sonova with respect to "negotiating financial terms" of the Supply Agreement when the Supply Agreement had financial terms in place *prior* to any of the supposed "misrepresentations"?  Sonova's allegations as to this element of fraud are not only implausible but nonsensical; its claim fails.

> ### d.   Sonova's claim for damages both is implausible and is barred by the Supply Agreement's terms.

Because Sonova's theory of damages is implausible and precluded by the Supply Agreement itself, element nine of its fraud claim fails.  Sonova's damages theory boils down to this string of speculative hypotheticals: (1) The Supply Agreement's "lucrative" compensation incented Fuel Medical to market Sonova devices to its members; (2) that incentive caused Fuel Medical to persuade its members to buy devices from Sonova; (3) Sonova would have paid Fuel Medical less if it had known Fuel Medical took on a minority member that was a Sonova "competitor"; (4) Fuel Medical would have hypothetically agreed to Sonova's change in payment terms; (5) despite the less "lucrative" financial terms, Fuel Medical nevertheless would have persuaded just as many Fuel Medical members to purchase the same (or a greater) number of Sonova products; and (6) Sonova would have kept more of the revenue earned of the sales Fuel Medical generated, and thus have increased its profits.

Sonova's whole pitch hinges on the assumptions that Fuel Medical would have agreed to all of the other terms in the Supply Agreement even though Sonova would have paid it less, and that Fuel Medical would have steered as much business to Sonova even though Fuel Medical had less incentive to do so (both absolutely and relative to its other manufacturer partners).  These critical components of a cogent damage theory are not even alleged in Sonova's FAC, perhaps because any such allegation—like the rest of this claim—is implausible.  Sonova's

FUEL MEDICAL, LLC'S MOTION TO DISMISS SONOVA USA, INC.'S FIRST AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

- 17 -

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1  theory is too speculative and implausible to pass the *Twombly* and *Iqbal* standards, and should be

2  dismissed.

3        Sonova's theory is also cut down by the terms of the Supply Agreement itself.  First, the

4  Supply Agreement applies to Sonova's fraud claim by virtue of section 7.06.  Specifically, the

5  Supply Agreement applies to any suit, action or proceeding . . . with respect to this Agreement *or*

6  *the dealings of the parties with respect hereto*."  (Supply Agreement § 7.06 [*id.* at 40 of 94].)

7  Sonova itself has advanced this argument.  (*Cf.* Sonova's Reply in Support of Its Motion to

8  Dismiss Fuel's FAC [ECF No. 44] at 12 (quoting section 7.06, and noting that "[a]bsent the

9  dealings of the parties with respect to the Agreement, the allegations underlying . . . claim[] for

10  fraud . . . could not exist.").)  The Supply Agreement's terms—including its limitation of liability

11  provision—applies to Sonova's claim.  And the Supply Agreement precludes the types of

12  damages that Sonova is seeking here.  The Agreement provides that "*in no event* shall either

13  party hereto be entitled to punitive, *consequential or speculative damages, including damages*

14  *for lost profits*."  (Supply Agreement § 7.20 [ECF No. 39 at 42 of 94].)  Sonova's claimed

15  damages seek speculative and consequential damages, including lost profits, and hence are

16  barred by the Supply Agreement itself.

17        Second, the notion that Sonova was paying "lucrative" prices to Fuel Medical (*see, e.*g,

18  Sonova's FAC ¶¶ 1, 3, 17, 24–26, 93, 95) is also contradicted by the Supply Agreement

19  itself.  For example, section 7.22 of the Supply Agreement states that "[r]emuneration flowing

20  between the parties hereunder is at fair market value," "is based upon an arm's-length

21  transaction," and "does not take into account, directly or indirectly, . . . any referral or business

22  of any . . . affiliate . . . of either party hereto."  (Supply Agreement § 7.22 [ECF No. 39 at 42 of

23  94].)  Thus, Sonova was paying "fair market value" to Fuel Medical, not "lucrative" or

24  "generous" prices.  Moreover, Sonova was making these payments without regard to any

25  "affiliate" of Fuel Medical's.  Not only does Oticon's eventual minority membership in Fuel

26  Medical not matter, it is also not true (based on the terms of the Supply Agreement itself) that

FUEL MEDICAL, LLC'S MOTION TO DISMISS SONOVA USA, INC.'S FIRST AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS
- 18 -
TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Sonova would have paid Fuel Medical less because of that membership.  It follows that Sonova's

claim for damages collapses.  Sonova's fraud claim should be dismissed.

**B.      The Court should dismiss Sonova's declaratory judgment count because, to the extent it falls within the Uniform Declaratory Judgments Act, it is redundant and litigating it will only impair the speedy, just, and efficient resolution of this matter.**

Sonova's claim for declaratory relief is subsumed by Fuel Medical's complaint, and does

not rely upon the allegations in Sonova's FAC.  The negative-framing in Sonova's FAC—i.e.,

that it "did not" do certain things—makes this clear.  Specifically, Sonova requests that this

Court enter an order:

 a. Declaring that Sonova did not breach the confidentiality provision of the parties' supply agreement;

 b. Declaring that Sonova did not breach the parties' NDA;

 c. Declaring that Sonova did not engage in fraud during its relationship and contract negotiations with Fuel;

 d. Declaring that Sonova did not engage in the theft or misappropriation of Fuel's trade secrets;

 e. Declaring that Sonova did not engage in the theft of misappropriation of Fuel's confidential information; and

 f. Declaring that Sonova was entitled to retain $466,928.25 of the Holdback[.]

(*See* Sonova's FAC, Prayer for Count I [ECF No. 39 at 21 of 94].)

The substance of Sonova's claim for declaratory judgment is redundant to the claims Fuel

Medical has alleged in this action.[4]  To the extent any of the requested declarations should be

considered, they should be dismissed from Sonova's FAC and filed (if at all) in Fuel Medical's

action.  Doing so will allow for efficiency and speed, as it narrows the procedural and technical

aspects of all remaining proceedings.

/ / /

/ / /

---

[4] This is consistent with Sonova's approach throughout this litigation.  Upon receiving Fuel Medical's demand letter and threat to file a complaint, Sonova preemptively filed a complaint in DuPage County, Illinois, hoping to thwart resolution of this dispute in the proper forum and venue.

FUEL MEDICAL, LLC'S MOTION TO  - 19 -
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT
Case No. 3:22-cv-05934-BHS

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1  **V.     CONCLUSION**

2          For the reasons stated above, the Court should grant Fuel Medical's motion and dismiss

3  Sonova's First Amended Complaint.

4

5          DATED:  October 27, 2023.

6                                          TONKON TORP LLP

7
                                           By:_____/s/ Christopher J. Pallanch_____
8                                              Anna Sortun, WSBA No. 48674
                                               Christopher J. Pallanch, WSBA No. 45859
9                                              Stephanie J. Grant, WSBA No. 60680

10                                             Attorneys for Fuel Medical, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FUEL MEDICAL, LLC'S MOTION TO           - 20 -
DISMISS SONOVA USA, INC.'S FIRST
AMENDED COMPLAINT                                        TONKON TORP LLP
Case No. 3:22-cv-05934-BHS                            888 SW Fifth Ave., Suite 1600
                                                          Portland, OR 97204
                                                           503.221.1440

**CERTIFICATE OF SERVICE**

1

2    I hereby certify that on October 27, 2023, I electronically filed the foregoing **FUEL MEDICAL, LLC'S MOTION TO DISMISS SONOVA USA, INC.'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

3

4

5    Brian W. Esler                          Ian H. Fisher
     Lane Conrad                             Paul J. Coogan
6    Miller Nash LLP                         Taft Stettinius & Hollister LLP
     111 SW 5th Avenue, Suite 3400           111 East Wacker Suite 2600
7    Portland, OR 97204                      Chicago, IL 60601-4208
       Email:  brian.esler@millernash.com      email:  ifisher@taftlaw.com
8      lane.conrad@millernash.com                     pcoogan@taftlaw.com

9

10   and hereby certify that I caused to be mailed by United States Postal Service the document to the non-CM/ECF participants:

11

12                             TONKON TORP LLP

13                             By:_____/s/ Christopher J. Pallanch_____
                                   Anna Sortun, WSBA No. 48674
14                                 Christopher J. Pallanch, WSBA No. 45859
                                   Stephanie J. Grant, WSBA No. 60680
15

16                                 Attorneys for Fuel Medical, LLC

17

18

19

20

21

22

23

24

25

26

TONKON TORP LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440